423 So.2d 1311 (1982)
Nathan Leon ASHLEY
v.
STATE of Mississippi.
No. 53266.
Supreme Court of Mississippi.
November 3, 1982.
Rehearing Denied January 12, 1983.
*1312 Johnston & Steinberger, Albert S. Johnston, III, Pascagoula, for appellant.
Bill Allain, Atty. Gen. by Charles W. Maris, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before SUGG, P.J., and HAWKINS and DAN M. LEE, JJ.
SUGG, Presiding Justice, for the Court:
Shawn M. Allman was killed on July 3, 1980 when the automobile in which he was a passenger was stopped at a traffic signal and was hit in the rear by an automobile driven by appellant. The automobile in which the deceased was riding caught fire and he died in the ensuing blaze. Appellant was convicted of manslaughter by culpable negligence and sentenced to serve a term of ten years. Appellant has assigned several errors but does not contend that the verdict of the jury was against the overwhelming weight of the evidence.

I
Appellant first argues that the trial court erred in failing to sustain his pretrial motion to suppress the results of a blood-alcohol test. The trial court conducted hearings on the motion to suppress. Patrolman Albert Santacruz testified that he arrived at the scene of the collision shortly after it occurred. The automobile in which Allman was riding was burning, the fire department arrived and the fire was extinguished about forty-five minutes later, and the body of Allman was recovered from the vehicle. In the meantime, Santacruz determined that four vehicles were involved in the collision and four people, including appellant, were sent by ambulance to the hospital.
Based on information he received from other officers who preceded him to the scene, about appellant's involvement in the collision and appellant's behavior, Santacruz radioed the sheriff's department and requested it to contact the hospital where appellant had been carried and instruct the hospital personnel to hold appellant and perform a blood-alcohol test on him. This request was made through the sheriff's office because Santacruz did not have access to a telephone at the scene of the collision and he had no radio contact with the hospital. The request was relayed to the hospital by the sheriff's department. If appellant had not been injured and sent to the hospital, he could have been arrested at the scene for the felony of manslaughter by culpable negligence.
Officer Santacruz arrived at the scene of the collision about 9:10 p.m. and approximately two hours and twenty minutes later, after completing his investigation, he went to the Singing River Hospital. When he arrived at the hospital the nightwatchman told him they were having trouble with a patient. He found the patient in the restroom, talked to him and persuaded the patient to get into a wheel chair to be transported to one of the emergency rooms. After the patient was placed in a wheel chair, Santacruz learned that the patient was the appellant. He testified that appellant was belligerent and was drunk. He then ascertained that a blood test had been previously run on the appellant, but did not know it was requested by appellant's physician.
On the second hearing on the motion to suppress, appellant called Dr. Edward Wiggins, an orthopedic surgeon, as his witness. Dr. Wiggins testified that he treated appellant at the hospital and ordered blood drawn from appellant for a blood-alcohol test. The doctor had not received instructions from any law enforcement official to perform a blood test, but ordered the blood test as appellant's physician for diagnostic purposes.
On cross-examination the doctor testified that appellant exhibited a very belligerent *1313 behavior, appellant was combative, and had a strong odor of alcohol on his breath. He stated that, since appellant had been in an automobile accident with the possibility of a head injury he ordered the blood-alcohol test to ascertain whether appellant's behavior was due to alcohol or injuries received in the accident. He testified that appellant had a .31% alcoholic content in his blood.[1]
He testified that, after his initial examination, appellant demanded that he be taken to the bathroom and the doctor felt that it was the better part of valor to grant appellant his request. Appellant threatened to leave the hospital so the doctor explained to a highway patrolman that appellant was apparently intoxicated, he had been in an automobile wreck and had a bad ankle fracture that needed surgery. He asked the officer to help him convince appellant to stay in the hospital. The officer "offered to take him to jail if he left the hospital," whereupon appellant changed his mind and consented to enter the hospital. The doctor stated that in his opinion the appellant was highly intoxicated. No objection was made to the cross-examination of the doctor which revealed the above facts.
At the first hearing on the motion to suppress the lab technician who drew the blood from appellant and the technician who administered the test testified in detail about drawing the blood at 10:55 p.m. and the results of the test.
The blood test was administered at the direction of Dr. Wiggins and not pursuant to the request of Patrolman Santacruz. Appellant had not been arrested when his blood was withdrawn for the test.
Appellant's motion to suppress was based on Fourth Amendment and privileged communication grounds.
We first address appellant's Fourth Amendment claims. The United States Supreme Court in Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) held that taking blood samples from a defendant who had been lawfully arrested did not violate his Fourth Amendment rights. In Cupp v. Murphy, 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973) the Court held that taking fingernail scrapings from one detained did not violate his Fourth Amendment rights where probable cause for his arrest existed. The Cupp rationale has been extended in some jurisdictions to include the warrantless taking of a suspect's blood for analysis prior to arrest where probable cause existed and the circumstances dictated that the blood should be taken for a test. Aliff v. State, 627 S.W.2d 166 (Tex.Cr.App. 1982); State v. Campbell, 615 P.2d 190 (Mont. 1980); State v. Oevering, 268 N.W.2d 68 (Minn. 1978).
We find appellant had not been lawfully arrested when his blood was withdrawn for testing. However, our examination of the facts must not stop here. We must determine whether Officer Santacruz had probable cause to detain appellant and order a blood test after he went to the hospital. The facts in possession of the officer at that time were that Ashley was driving an automobile which had run into the rear end of another automobile which was stopped at a traffic signal, that an occupant of the stopped automobile had been killed in the accident, and in the opinion of the officer appellant was intoxicated. Under these facts the officer could then have arrested appellant on a charge of manslaughter and required appellant to submit to a test to determine the alcoholic content of his blood. At that time there existed probable cause for arrest and also probable cause to search appellant by requiring him to submit to the withdrawal of blood from his body to be tested.
The officer did not order another blood test because he had been advised that blood had been withdrawn from appellant and the test results were known to the officer.
*1314 The United States Supreme Court recognized in Schmerber, supra, that extraction of blood samples for testing is a highly effective means of determining the degree to which a person is under the influence of alcohol. It also recognized, as this Court did in Jackson v. State, 310 So.2d 898 (Miss. 1975), that the percentage of alcohol in the blood begins to diminish shortly after drinking stops as the body functions to eliminate alcohol from the system.
Information gathered at the accident scene and later at the hospital not only provided probable cause for appellant's arrest, but also indicated that appellant was probably intoxicated; hence, the need for a blood test. Under the facts of this case, we hold that appellant's Fourth Amendment rights were not violated, and the result of the blood test administered at the direction of Dr. Wiggins was admissible in evidence. We hold that, where the state is justified in requiring a blood test to determine the alcoholic content in a suspect's blood, and such test has in fact been performed, although for diagnostic and not law enforcement purposes, the state is entitled to the benefit of the test results. It would have been unduly repetitive to require the officer to have blood withdrawn from appellant a second time for testing. This would have required appellant to be subjected to another intrusion of his body. Any additional tests were unnecessary because one had already been performed, and the results were available.
Appellant also argues that his motion to suppress should have been sustained because admission of the result of the test violated the privileged communication statute. Section 13-1-21 Mississippi Code Annotated (Supp. 1981).[2] The privilege applies in criminal proceedings. Keeton v. State, 175 Miss. 631, 167 So. 68 (1936). However, the privilege may be waived. We hold that appellant waived the privilege when he called Dr. Wiggins to the stand as his own witness and the result of the test was elicited from the doctor on cross-examination without objection from the defendant.

II
Appellant also argues that the trial court erred in failing to sustain his objection to the testimony of Dr. Wiggins. When the cause came on for trial immediately following the second hearing on the motion to suppress, the state introduced Dr. Wiggins to prove the result of the blood test administered to appellant. The state did not call the lab technicians who withdrew the blood and performed an analysis of the blood, but chose to use Dr. Wiggins to show the result of the test.
Appellant argues that Dr. Wiggins' testimony was privileged and should not have been admitted over his objection. He relies on Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968) where the Supreme Court held that a prosecutor may not use testimony given by a defendant at a pretrial hearing on a motion to suppress evidence. In Simmons the issue was whether a defendant would be required to give up his Fifth Amendment right *1315 against self incrimination in order to assert his Fourth Amendment rights to be free from unreasonable searches and seizures. The Supreme Court held that one constitutional right should not have to be surrendered in order to assert another.
In this case there is no tradeoff of constitutional rights. The question is simply whether appellant waived the privileged communication of Dr. Wiggins. When he called Dr. Wiggins as a witness on his motion to suppress and did not object to the cross-examination of the doctor in open court, he waived the privilege. Dr. Wiggins' testimony at the trial in chief was substantially the same as his testimony on cross-examination on the motion to suppress. We hold that appellant waived the privilege and the court did not err in permitting Dr. Wiggins to testify.

III
The appellant also seeks the reversal of this case because of the judge's failure to admonish the assistant district attorney for a statement made in the jury's presence. The plea for admonishment arose from the following incident at trial:
BY MR. JOHNSTON: Lady and gentlemen of the jury, let me just say a couple of things here with regard to the testimony of the witnesses for the State, on behalf of the State. I notice that Mrs. Stafford, as closely as she observed things, thought there was a truck down in the road in front of her, when in fact it was a Corvette. A Corvette is a very little car. She testified that it was a truck stopped in that lane. I don't really know how much this lady really saw. And, then we come to Dr. Wiggins' testimony. Dr. Wiggins testified that the blood test showed .3, is what he said. And, you remember on cross examination, I asked him if he knew whether or not alcohol was used to swab down the arm, and he said he didn't. I submit to you that if it was used, then it would jump that test up to .2 or .3 within seconds. BY MR. GUIROLA: Judge, I'm going to object to that, because that's an out and out lie, and Mr. Johnston knows it.
BY MR. JOHNSTON: That is not so.
BY MR. STEINBERGER: It certainly isn't.
BY THE COURT: Excuse the jury just a minute.
Initially we note, as conceded by the appellant in his brief, the statement on the possible effect of the use of alcohol swabs on the results of the blood tests was improper. There was no evidence before the jury to justify the statement of appellant's counsel. The conclusion of appellant's counsel about the effect of using an alcohol swab when withdrawing blood for a blood-alcohol test was injected into the record by appellant's counsel at the hearing on the motion to suppress. The conclusion of counsel about the effect of using an alcohol swab was not supported by evidence; in fact, the only evidence was that a zephrain swab was used. Zephrain swabs do not contain alcohol.
Nevertheless, we are convinced that the assistant district attorney's retort was uncalled for and was improper. Counsel should never use actionable words in referring to opposing counsel because such remarks inject an issue which is not relevant on the question of guilt or innocence. The following language illustrates the district attorney's duty in prosecuting.
Of course, the district attorney, as an officer of the court, and as a representative of the state, should never permit his zeal in the prosecution of criminal case to cause him to forget that he must exercise the utmost self-restraint and conduct himself with propriety, fairness and dignity. [Dozier v. State, 257 So.2d 857, 860 (Miss. 1972)]
Also, in Edmond v. State, 312 So.2d 702, 705 (Miss. 1975), we stated:
[T]rial courts are allowed considerable discretion to determine whether or not the conduct of an attorney during a trial is so prejudicial that an objection should be sustained or a new trial granted. [Citing Robertson v. State, 257 So.2d 505 (Miss. 1972)]
*1316 Furthermore, in Bass v. State, 54 So.2d 259 (Miss. 1961) we held that an improper statement by the prosecutor does not require reversal unless it is prejudicial.
The remark that appellant's counsel was guilty of trickery to build up a record in the case was of course improper, but an improper statement is not sufficient to justify a reversal unless it was prejudicial. "A reversal is only warranted for such error as is harmful and which might influence the jury wrongfully in reaching a conclusion of guilt." Cody v. State, 167 Miss. 150, 163, 148 So. 627, 631. See also Flowers v. State, 101 Miss. 108, 57 So. 226; Calicoat v. State, 131 Miss. 169, 95 So. 318; Wexler v. State, 167 Miss. 464, 142 So. 501; Comings v. State, 163 Miss. 442, 142 So. 19; McLemore v. State, 178 Miss. 525, 172 So. 139; Porter v. State, 193 Miss. 774, 10 So.2d 377; Ivey v. State, 206 Miss. 734, 40 So.2d 609. (54 So.2d at 262)
Furthermore, under Mississippi Supreme Court Rule 11 this Court will not reverse a case where an error occurs unless, on a review of the whole record, it affirmatively appears "that such judgment has resulted in a miscarriage of justice." It is our opinion that it was error for the judge not to admonish the assistant district attorney. He should have summarily punished him for contempt for using actionable words. The failure of the court to admonish was error, but was harmless error, beyond a reasonable doubt. The proof of appellant's guilt was overwhelming and the error did not result in a miscarriage of justice. Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969).

IV
The appellant also complains that the trial judge's admission into evidence a color photograph depicting the remains of one of the victims was an abuse of discretion. There is no merit in this assignment for the photograph was probative of the cause of death and the location of the victim. In this state a trial judge is granted broad discretion in admitting photographs. Briggins v. State, 416 So.2d 691 (Miss. 1982). Moreover, as long as photographs "supplement or add clarity to the testimony" no abuse of discretion is found. Hughes v. State, 401 So.2d 1100, 1106 (Miss. 1981).

V
Finally, the appellant asserts reversible error was committed when the trial judge admitted into evidence a diagram of the accident scene sketched by the investigating officer. He argues that it improperly revealed the officer's hypothesis of how the accident occurred in violation of the rule in this state that it is in the province of the jury to determine the cause of an accident. Cowan v. State, 399 So.2d 1346 (Miss. 1981); Gandy v. State, 355 So.2d 1096 (Miss. 1978). However, the diagram in his case was admitted, after proper predicate was made, during the testimony of an eyewitness to the accident, not the investigating officer. The diagram corroborated this testimony and in no way invaded the province of the jury.
On appeal, for the first time, appellant calls attention to three markings on the exhibit and argues they made the exhibit inadmissible. The markings are the initials "P.O.I." in two places and "K-29." He surmises that the jury probably assumed the initials "P.O.I." mean point of impact, but does not suggest what "K-29" means. He did not object on this ground at trial and will not be heard on this objection for the first time on appeal. In Boring v. State, 253 So.2d 251 (Miss. 1971) we held:
Objections to evidence must bring to the attention of the trial judge the specific ground on which it is contended such evidence is inadmissible so that the trial judge may determine whether or not such evidence is available to objector's adversary.
The rule requiring specific objections is necessary because to permit litigants to hold back objections until on appeal would mean that costly new trials would be had where valid objections could have been sustained during the trial. Roberds v. State, 187 So. 755 (Miss. 1939); Kimbrall v. State, 178 Miss. 701, 174 So. 47 (1937); Dobbs v. State, 167 Miss. 609, 142 *1317 So. 500 (1932); Williams v. State, 171 Miss. 324, 157 So. 717 (1934). (253 So.2d at 253)
In any event, if the jury assumed "P.O.I." meant point of impact, this was in accord with the testimony of eyewitnesses.
In light of all the foregoing, this case should be and is affirmed.
AFFIRMED.
PATTERSON, C.J., WALKER, P.J., and BROOM, ROY NOBLE LEE, BOWLING, HAWKINS, DAN M. LEE and PRATHER, JJ., concur.

ON PETITION FOR REHEARING
DAN M. LEE, Justice, dissenting:
Appellant, Nathan Leon Ashley, was indicted, tried and convicted of manslaughter by culpable negligence by the Circuit Court of Jackson County. Upon conviction, he was sentenced to serve a term of ten years in the Mississippi Department of Corrections. His conviction and sentence were subsequently affirmed by this Court on November 13, 1982, in a written opinion.
Appellant, on appeal to this Court, and now on petition for rehearing, challenged the right of the state to call Dr. Christopher Edward Wiggins, appellant's physician, as a witness against him on medical privilege grounds.
The record discloses that on February 3, 1981, appellant filed a written motion to suppress the results of a blood alcohol test which was ordered by Dr. Wiggins at the emergency room of the Singing River Hospital following the automobile collision from which the present indictment was returned against him.
On February 23, 1981, a hearing was had on appellant's motion to suppress and motion in limine at which time the trial court overruled the motion to suppress, holding that appellant was under arrest at the time his blood sample was taken. On March 6, 1981, appellant renewed his motion to suppress the blood alcohol test. The court thereafter allowed appellant to offer additional proof in support of his motion. In support thereof, appellant called Dr. Wiggins as a witness. Dr. Wiggins testified only that he performed the blood alcohol test for his own diagnostic information upon appellant's admission to the hospital for treatment of a severely fractured left ankle and possible head injuries which resulted from the automobile collision. The state then cross-examined Dr. Wiggins, without objection, concerning the results of the blood test and appellant's condition. The trial court, at the conclusion of the hearing, overruled appellant's motion, standing by its original ruling.
The case proceeded to trial, whereupon the state called Dr. Wiggins as a witness during its case in chief. When Dr. Wiggins was questioned as to appellant's condition, the following objection was interposed and ruling made thereon:
BY MR. STEINBERGER: If it please the Court, we would move that that answer be stricken and object to this doctor's testimony upon the grounds of privilege at this time, and ask that the doctor be restricted in his testimony other than what he actually saw, other than in the treatment of this patient.
BY MR. GUIROLA: Your Honor, first of all, the witness observed these things in the presence of others, therefore, it cannot be privileged. Second of all, he testified earlier in the motion to suppress as to all these facts and therefore there can be no privilege. He testified in a courtroom full of people as to what he observed. The privilege has been waived and is waived forever.
BY THE COURT: I'm going to overrule the objection and allow him to testify. I think the privilege has been waived.
On appeal, this Court, in affirming appellant's conviction and sentence, held appellant waived the privilege when he called Dr. Wiggins to the stand as his own witness and the result of the test was elicited from the doctor on cross-examination without objection during the motion to suppress.
Mississippi Code Annotated section 13-1-21 (Supp. 1981) provides:

*1318 All communications made to a physician or surgeon by a patient under his charge or by one seeking professional advice are hereby declared to be privileged, and such physician or surgeon shall not be required to disclose the same in any legal proceeding except at the instance of the patient or in case of the death of the patient at the instance of his personal representative or legal heirs in case there be no personal representative, or except, if the validity of the will of the decedent is in question, at the instance of the personal representative or any of the legal heirs or any contestant or proponent of the will. However, waiver of the medical privilege of cancer patients in regard to information necessary under section 41-3-25, Mississippi Code of 1972, for the tumor registry agency shall be implied, and nothing in this section shall be construed to prohibit cooperation with the state board of health as the official tumor registry agency.
In any action commenced after July 1, 1976, against a physician, or after July 1, 1979, against a hospital or hospital employee, for professional services rendered or which should have been rendered the filing of such an action shall constitute an implied waiver of the medical privilege and any medical information relevant to the allegation upon which the cause of action is based may be disclosed in any such proceedings. (emphasis ours)
The privilege has clearly been held to apply in criminal proceedings. Keeton v. State, 175 Miss. 631, 167 So. 68 (1936).
A waiver of the privilege may be effected only at the instance of the patient or, if the patient is deceased, by either his personal representative, his legal heirs, or the proponents and contestants of his will. § 13-1-21, supra.
In Tarrants v. State, 236 So.2d 360 (Miss. 1970), this Court held a waiver of the privilege occurred when a criminal defendant placed his doctor on the witness stand. Tarrants is distinguishable from the present case in at least two respects. First, defendant's counsel in Tarrants questioned the doctor about privileged communications. Secondly, the doctor was called by the defendant's counsel during the course of the trial. In the case sub judice, appellant's counsel only called Dr. Wiggins during appellant's hearing on the motion to suppress prior to the trial and out of the presence of the jury. Appellant did not go into any communications made to the doctor which were privileged.
In Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), the Supreme Court held that when a defendant testifies in support of a motion to suppress evidence on fourth amendment grounds, his testimony may not thereafter be admitted against him at trial on the admission of guilt unless he makes no objection. Because Simmons involved a trade-off between fourth and fifth amendment rights, the state contends it has no application to the case at bar because the medical privilege is merely a creature of statute. However, if appellant by calling his doctor as a witness in support of his motion to suppress waives his medical privilege for all purposes, then such would definitely have a chilling effect upon a criminal defendant's decision to make a fourth amendment challenge. As to appellant's failure to object to the doctor's testimony on cross-examination, the pretrial hearing was merely an evidentiary hearing for the purpose of determining the admissibility of the blood alcohol test. There was no jury present. As soon as the doctor was called by the state and asked to divulge privileged communications, a timely objection was entered.
Conceding that under the rationale of Cupp v. Murphy, 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973), there was probable cause to arrest appellant and probable cause to search him by requiring him to submit to the withdrawal of blood from his body to be tested, the state could have proven the results of the blood test without the necessity of a second test being made. However, such proof should have been suppressed from Dr. Wiggins due to the medical privilege. The effect is that Dr. Wiggins was forced to testify against his patient without *1319 the patient's consent, in clear violation of the privileged communication statute.
Even though the medical privilege is statutory, the use of the blood test results clearly incriminated appellant in the sense that he was forced to trade off his fifth amendment rights to make a fourth amendment challenge to the admissibility of the test. Dr. Wiggins' testimony should have been suppressed because of medical privilege. By exercising his fourth amendment rights, the appellant was forced to divulge privileged communications through his doctor's testimony which otherwise would have been suppressed. Appellant, therefore, was forced in effect to choose which constitutional right he would rely upon.
To hold here that appellant waived the privilege by merely calling Dr. Wiggins to the stand will obliterate the privilege insofar as blood alcohol tests are sought to be suppressed. The physician's testimony was essential at the suppression hearing in this case. If a defendant is deemed to have waived his medical privilege by merely calling the doctor on a hearing on a motion to suppress, his right to invoke the privileged communication statute will be seriously impeded if not obliterated.
In my opinion, the trial court erred in holding that appellant waived his medical privilege by calling Dr. Wiggins as a witness in support of his motion to suppress. I would therefore sustain the petition for rehearing and reverse and remand the cause for a new trial.
PATTERSON, C.J., joins this dissent.
NOTES
[1] Section 63-11-39 Mississippi Code Annotated (1972) provided that if a person's blood contained .15% or more by weight of alcohol, such person will be presumed to be intoxicated. This section was amended by section 10 chapter 491 Mississippi General Laws of 1981, effective July 1, 1981.
[2] All communications made to a physician or surgeon by a patient under his charge or by one seeking professional advice are hereby declared to be privileged, and such physician or surgeon shall not be required to disclose the same in any legal proceeding except at the instance of the patient or in case of the death of the patient at the instance of his personal representative or legal heirs in case there be no personal representative, or except, if the validity of the will of the decedent is in question, at the instance of the personal representative or any of the legal heirs or any contestant or proponent of the will. However, waiver of the medical privilege of cancer patients in regard to information necessary under section 41-3-25, Mississippi Code of 1972, for the tumor registry agency shall be implied, and nothing in this section shall be construed to prohibit cooperation with the state board of health as the official tumor registry agency.

In any action commenced after July 1, 1976, against a physician, or after July 1, 1979, against a hospital or hospital employee, for professional services rendered or which should have been rendered the filing of such an action shall constitute an implied waiver of the medical privilege and any medical information relevant to the allegation upon which the cause of action is based may be disclosed in any such proceedings.