511 So.2d 929 (1987)
William P. WHITLEY
v.
STATE of Mississippi.
No. 57042.
Supreme Court of Mississippi.
August 12, 1987.
Albert S. Johnston, III, Johnston & Shaddock, Pascagoula, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Henry C. Clay, III, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, P.J., and DAN M. LEE and GRIFFIN, JJ.
ROY NOBLE LEE, Presiding Justice, for the Court:
William P. Whitley was indicted, tried and convicted in the Circuit Court of Jackson County on two counts of manslaughter by culpable negligence. The lower court sentenced him to twenty (20) years on each count in the custody of the Mississippi Department of Corrections, the sentences to run concurrently. Whitley has appealed to this Court and assigns three errors in the trial below.
The evidence reflects that on July 4, 1982, appellant was involved in an automobile accident on U.S. Highway 90 in Jackson County, which resulted in the death of John Green, Sr. and his three-year-old son John Green, Jr.
*930 In the area of the collision, U.S. Highway 90 is a four-laned east-west highway divided by a median of grass approximately 15-20 feet in width. Appellant, travelling without passengers, drove his automobile a distance of at least one-half (1/2) mile eastward in the west-bound lanes of the highway and struck an automobile head-on, which was driven by John Green, Sr., and occupied by his wife, and two small children. The point of impact occurred seven (7) feet south of the north curb of the westbound lanes, at approximately 3 p.m. on a Sunday and at a point where the highway is flat and straight for many miles. According to Mrs. Toni Green, the wife and mother of the two victims, Mr. Green was driving, she was sitting on the front seat and her two children in the rear seat; they were heading west in the righthand or slow lane, following a pickup truck at a rate of 45 mph when the truck suddenly swerved from its course, in order to avoid colliding head-on with appellant's car, which was bearing down on them head-on; and the accident occurred an instant after the truck swerved out of its path.
James Sellers, who was a passenger in an eastbound automobile, travelling in its proper lane, testified that he saw appellant exit the Hy-Tymes Lounge parking lot located on the north side of Highway 90, approximately eight-tenths (8/10) of a mile west of the accident; that the automobile turned left, heading east in the westbound lanes of traffic; that Sellers and the driver of the car he was travelling in began to blow the horn, wave and yell at appellant from across the median in an effort to attract his attention; that appellant turned his head in their direction for a few seconds, but continued east in the westbound lanes; and that, after seeing a few cars manage to get by appellant, he looked forward and suddenly "heard horns blow and then a crash" and saw both automobiles sliding off the road.
Officer Joseph Gazzo, Mississippi Highway Patrol, arrived on the scene, hurried to appellant's car to check on appellant's condition, smelled the odor of alcohol and saw several beer cans and a whisky bottle on the floorboard. After completion of the investigation, appellant was informed at the hospital that he was being charged with two counts of manslaughter, appellant was read his rights, and his consent for a blood sample was requested. Officer Gazzo testified that appellant signed the release form for the blood sample, but it was missing at the time of trial. Officer Albert Santa Cruz testified that appellant was belligerent and slurred his speech when talking, and that appellant signed the consent form to take a blood sample.
Larry Orgill and Bruce Hoyt, lab technicians at Ocean Springs Hospital, testified that appellant was very uncooperative and unsuccessfully resisted their efforts to procure a blood sample. The lab technician at Singing River Hospital, who performed the test on the blood sample, testified that appellant's blood alcohol content was .29. Dr. Dewey Lane testified for the State that a .30 blood alcohol content in an experienced drinker would leave him in a stupor with greatly diminished capacity, both mental and physical.

I.

THE LOWER COURT ERRED IN ADMITTING EVIDENCE RELATING TO APPELLANT'S BLOOD ALCOHOL TEST.
The appellant filed motions in limine to suppress the blood alcohol test performed on him. He argues that the evidence indicates he was unable to consent to the test; that the evidence was inadmissible under Mississippi Code Annotated § 63-11-7 (1972), and constituted reversible error. He refers to his lack of cooperation and belligerency in the emergency room of the Ocean Springs Hospital as indicating that he was in a condition rendering him incapable of refusal.
Investigating Officer Santa Cruz informed appellant at the hospital that he was being charged with two counts of manslaughter as a result of the collision. Without question, there was overwhelming evidence that the officers had probable cause to arrest appellant, and to charge him with the crimes of manslaughter. In Ashley v. *931 State, 423 So.2d 1311 (Miss. 1983), this Court said:
We find appellant had not been lawfully arrested when his blood was withdrawn for testing. However, our examination of the facts must not stop here. We must determine whether Officer Santacruz had probable cause to detaih appellant and order a blood test after he went to the hospital. The facts in possession of the officer at that time were that Ashley was driving an automobile which had run into the rear end of another automobile which was stopped at a traffic signal, that an occupant of the stopped automobile had been killed in the accident, and in the opinion of the officer appellant was intoxicated. Under these facts the officer could then have arrested appellant on a charge of manslaughter and required appellant to submit to a test to determine the alcoholic content of his blood. At that time there existed probable cause for arrest and also probable cause to search appellant by requiring him to submit to the withdrawal of blood from his body to be tested.
Ashley, 423 So.2d at 1313. See also Williams v. State, 434 So.2d 1340 (Miss. 1983); Bayse v. State, 420 So.2d 1050, 1052-53 (Miss. 1982); and Gregg v. State, 374 So.2d 1301 (Miss. 1979).
In Gibson v. State, 503 So.2d 230 (Miss. 1987), this Court was again confronted with the contention that, absent consent or arrest, the blood alcohol test results are inadmissible. The Court reaffirmed Ashley, supra, finding the evidence sufficient to provide probable cause to search for and seize evidence of intoxication. Gibson, 503 So.2d at 234.
The assigned error is rejected.

II.

THE LOWER COURT ERRED IN PERMITTING IMPROPER REBUTTAL.
The appellant testified in his own behalf at the trial about the hospitals to which he was admitted subsequent to the accident, and stated the following:
Q Was it a psychiatric hospital, is that what you're saying?
A Yeah, psychiatric treatment.
Q Now, let me ask you one question right now. Did you go to any of these hospitals because you was an alcoholic?
A No, I went because they sent me for that.
On cross-examination, the State, without objection, questioned appellant as to whether or not he had ever been treated for alcoholism, and appellant denied ever having been admitted to a hospital for alcoholic abuse, except on one occasion. His testimony follows:
Q Well, have you ever been treated in a V.A. hospital for alcohol abuse?
A Yes.
Q You have, haven't you, Mr. Whitley?
A I started one one time.
Q And, Mr. Whitley, you have constantly been treated for alcohol abuse for years and years and years, haven't you?
A No.
* * * * * *
Q And I'll ask you real clearly, have you ever been a patient for alcohol abuse in any hospital in the United States of America?
A Yeah.
Q Okay, now tell us where that was, please, sir, and how many.
A I wasn't in there very long for it. It was in Gulfport.
After the appellant rested his case-in-chief, the State sought to call in rebuttal one of appellant's treating physicians to testify that appellant had a history of alcohol abuse. Appellant, out of the jury's hearing, made a motion in limine, objecting to the proposed rebuttal testimony. The court ruled that when the appellant voluntarily took the stand and testified in his own defense, the State, contending that the statements were untruthful and in violation of appellant's oath, could use otherwise privileged matters solely for the purposes of impeachment. The court further ruled that the medical privilege was waived insofar as the State using testimony in rebuttal *932 to contradict or impeach the testimony of the appellant.
Dr. Claro Onate was called by the State in rebuttal, and he testified that he had treated appellant in May of 1984 for alcohol dependence continuance, a pathological use of alcohol which impairs the ability to care for one's self; that appellant's medical history given to him and his staff, indicates that appellant had this problem for the previous fifteen (15) years.
Appellant contends that the lower court committed error in that (1) the information was privileged; (2) it was hearsay; and (3) it related to collateral and remote issues. He cites Carlisle v. State, 348 So.2d 765 (Miss. 1977), to the effect that, although impeachment is proper when the evidence is relevant, it is not admissible for impeachment on a collateral matter.
In Quinn v. State, 479 So.2d 706 (Miss. 1985), a prosecution for the sale of a controlled substance, the defendant took the stand and, on direct examination, testified that he had never sold marijuana to anyone at any time. The prosecution introduced evidence of a prior marijuana sale. The Court held:
Without doubt, testimony that Quinn was involved in a November 4 marijuana sale was not admissible to establish the truth of the facts there asserted. When, however, in response to questions by his own attorney, Quinn testified on direct examination that he did not sell marijuana and had never sold marijuana to anyone at any time, he "opened the door". Evidence of the prior marijuana sale was still not admissible to establish the truth of those facts. Such question were, however, permissible for purposes of impeaching Quinn's credibility. This question has been considered in Pierce v. State, 401 So.2d 730, 732-33 (Miss. 1981) which holds that in similar circumstances cross-examination questions such as those put by the state were legitimate for impeachment purposes.
479 So.2d at 708. See also Pierce v. State, 401 So.2d 730 (Miss. 1981).
Appellant's principal argument for error under this assignment is based upon Mississippi's medical privilege, Mississippi Code Annotated § 13-1-21 (Supp. 1986). In response, the State relies upon Ashley v. State, supra, for the proposition that it may be, and was, waived in the present case. See also Dennis v. Prisock, 254 Miss. 574, 584, 181 So.2d 125, 128 (1965).
Assuming, but not deciding, that the rebuttal evidence went to a collateral matter, and that there had not been an effective waiver of the medical privilege, we are of the opinion that the evidence is overwhelming as to appellant's guilt, and that the error, if any, did not result in a miscarriage of justice.[1] Therefore, the assigned error is rejected.

III.

THE LOWER COURT ERRED IN SENTENCING THE APPELLANT.
The lower court imposed a sentence of twenty (20) years on each count of the indictment, to run concurrently. The appellant contends that the sentences are harsh and amount to cruel and unusual punishment. This Court has held on numerous occasions that, when the trial judge imposes a sentence permitted by statute, the sentence is within the sound discretion of the trial judge and does not constitute cruel and unusual punishment in violation of the Eighth Amendment to the Constitution of the United States. See Adams v. State, 410 So.2d 1332 (Miss. 1982); Anderson v. State, 381 So.2d 1019 (Miss. 1980); and Green v. State, 270 So.2d 695 (Miss. 1972).
The assigned error is rejected.
AFFIRMED.
WALKER, C.J., HAWKINS, P.J., and DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
NOTES
[1] Miss.Sup.Ct. Rule 11.