## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 97-KA-00362-SCT

*JOEL CRAIG WILKERSON*

*v.*

*STATE OF MISSISSIPPI*

DATE OF JUDGMENT: 02/21/97

TRIAL JUDGE: HON. GEORGE B. READY

COURT FROM WHICH APPEALED: DESOTO COUNTY CIRCUIT COURT

ATTORNEY FOR APPELLANT: ROBERT P. CHAMBERLIN

ATTORNEY FOR APPELLEE: OFFICE OF THE ATTORNEY GENERAL

BY: DEWITT T. ALLRED, III

DISTRICT ATTORNEY: ROBERT L. WILLIAMS

NATURE OF THE CASE: CRIMINAL - FELONY

DISPOSITION: AFFIRMED - 11/12/98

MOTION FOR REHEARING FILED:

MANDATE ISSUED:

**BEFORE SULLIVAN, P.J., BANKS AND WALLER, JJ.**

**BANKS, JUSTICE, FOR THE COURT:**

¶1. The issues presented in this appeal from the conviction and sentence for DUI homicide include: whether the lower court erred by failing to suppress the blood alcohol test results as an illegal seizure; whether the blood samples for the test, obtained from a foreign jurisdiction, should have been suppressed; whether appellant's request for appointment of an expert witness was wrongfully denied; whether sentencing under a lesser included crime which carried a longer sentence was error resulting in cruel and unusual punishment; whether appellant's proposed jury instructions were properly excluded; and whether motions for a directed verdict or judgment notwithstanding the verdict should have been granted. We conclude that these issues are without merit and affirm the appellant's conviction and sentences accordingly.

**I**.

¶2. On or about August 26, 1995, Joel Craig Wilkerson was traveling Westbound on Stateline Road in DeSoto County, Mississippi. The automobile being driven by Wilkerson struck the vehicle driven by Cynthia McGowan in a head on collision. Witnesses to the accident included Wilkerson, McGowan and Candida Sears, who claims to have witnessed the accident through her rear view mirror. Randy Parks also witnessed Wilkerson driving recklessly shortly before the accident.

¶3. Southaven Police and medical personnel arrived and transported all injured parties to the hospital. They took McGowan and Wilkerson to the Regional Medical Center (the Med.) in Memphis, Tennessee. They took Juanita Wilson, a passenger in the other vehicle, to Baptist-DeSoto Hospital in Southaven, DeSoto County, Mississippi where she was pronounced dead after arrival.

¶4. Officer Max Herring of the Southaven Police Department left the scene with directions to follow up on potential blood testing of Wilkerson. Herring shortly after that noticed that he could not continue in the westbound direction he was traveling and had to back track and head eastbound on Stateline Road. Upon realizing that he did not have a blood testing kit with him, Herring traveled to the city of Horn Lake, Mississippi, which is approximately 15 miles from the Med. After obtaining a blood testing kit from the Horn Lake Police Department, Officer Herring went to the Med.

¶5. When he arrived at the Med., Officer Herring gained the assistance of Sherri Reinberg, a nurse with the Med. Reinberg withdrew a blood sample from Wilkerson after 30-45 minutes awaiting approval from supervisors. This was done without a warrant.

¶6. Reinberg gave the blood sample to Officer Herring who turned it over to the Mississippi Crime Laboratory Batesville office.

¶7. On August 30, 1995, the sample was transported from the Mississippi Crime Laboratory Batesville office to Jackson. On October 5, 1995 Sharon Jones of the Mississippi Crime Lab opened the sample, without testing it at that time. She instead resealed and re-shelved the sample for later testing. On February 9, 1996, Ms. Jones reopened the sample. She determined that the blood alcohol content of Wilkerson at the time of testing was .15% ethyl alcohol. Jones testified that she could not relate the blood alcohol reading at the time of withdrawal to Wilkerson's blood content at the time of the accident.

¶8. Wilkerson was found guilty of violating Miss. Code Ann. § 63-11-30(4) (1996).[1] He was sentenced to twenty years imprisonment in the Mississippi Department of Corrections, with two years suspended and to payment of restitution. Post-trial, Wilkerson filed a motion for j.v.o.v, or alternatively, a new trial. The trial court overruled the motion. Aggrieved, Wilkerson appeals to this Court for relief.

## II.

¶9. Wilkerson asserts three grounds under which his blood test evidence should have been suppressed.

### a.

¶10. The first point of contention is that Officer Herring violated Miss. Code Ann. § 63-11-8 (1972 as amended)[2] in obtaining the blood evidence. Section 63-11-8 is one of several statutes found under the Implied Consent Law. *See* Miss. Code Ann. tit. 63, § 11 (Supp. 1998). Where there is substantial compliance with implied consent statutes, there is no error in admitting test results into evidence. ***Fulton v. City of Starkville***, 645 So. 2d 910, 913 (Miss. 1994).

¶11. The record reflects that Herring drew the blood sample within two and ½ hours after the accident, as opposed to two hours as required by the statute. The record also reflects that the nurse at the Med., Sherri Reinberg drew Wilkerson's blood only after obtaining permission from her supervisor.

¶12. While section 63-11-8 requires the attending physician to deem the blood test clinically permissible, there is no reference in the record to the attending physician. Therefore, reason would suggest the authorizing supervisor contacted by Nurse Reinberg was the physician in charge of the trauma area on August 26, 1995. Moreover, Officer Herring testified that Nurse Reinberg refused to administer the test until she spoke with a doctor. Nurse Reinberg, a registered nurse, was medically qualified under the statute to administer the test, and would not have taken Wilkerson's blood if not medically feasible. Section 63-11-8 further states the blood test shall be administered within two hours, *if possible*. Officer Herring, by getting the test administered within two and ½ hours, substantially complied with this requirement. If not for his traveling to Horn Lake, Mississippi to obtain a Blood Alcohol Kit, and waiting for Nurse Reinberg to obtain permission from her supervisor, the test would have been given within the exact two hour time frame set out in 63-11-8. In light of the circumstances surrounding administration of the test, Herring acted in substantial compliance with 63-11-8. Thus, the trial court did not err in admitting the blood evidence.

b.

¶13. Wilkerson next challenges that the investigating officer lacked probable cause to require a warrantless blood test of the defendant. Officer Herring obtained a blood sample from Wilkerson once at the hospital to measure alcohol content in his blood. Probable cause for a search is a common sense determination that the facts and circumstances known to the police officer, either through his own direct knowledge or gained second-hand from reliable sources, are such that contraband or evidence material to a criminal investigation will be found in a particular place. It must be more than mere or reasonable suspicion, but it need not meet the requirements of proof beyond a reasonable doubt. *Rooks v. State*, 529 So. 2d 546, 554-55 (Miss. 1988). This Court noted in *Longstreet v. State,* 592 So. 2d 16, 21 (Miss. 1991), that blood searches based upon probable cause are legal. Where the state is justified in requiring a blood test to determine the alcoholic content in a suspect's blood, and the test has been performed, the state is entitled to the benefit of the test results. *Id.* (*citing Ashley v. State,* 423 So. 2d 1311, 1314 (Miss. 1983)).

¶14. This case is similar to *Ashley*. The facts that were available to the officer then were that Ashley was driving an automobile that had struck another automobile in the rear, killing the occupant of that vehicle. Ashley had not been lawfully arrested, but the facts show that the officer was aware that Ashley had been driving an automobile which had run into the rear end of another automobile stopped at a traffic signal, that an occupant of the stopped vehicle had been killed, and that in the opinion of the officer, Ashley was intoxicated. *Ashley v. State,* 423 So. 2d at 1313. Additional facts show that after leaving the scene of the collision, the officer went to the hospital where Ashley was taken after the collision. There, the officer observed Ashley to be belligerent and drunk. *Id.* at 1312. Information gathered by the officer at the scene and at the hospital provided the officer not only with probable cause to arrest Ashley, but probable cause to believe that Ashley was intoxicated, indicating the need for a blood test. *Id*. at 1313.

¶15. In the present case, officer Herring knew from his personal knowledge and from statements of eyewitnesses that (1) Wilkerson had been involved in a head-on collision; (2) that the collision occurred in the other vehicle's traffic lane; (3) that just before the collision Wilkerson had been driving recklessly and at a very high rate of speed and almost sideswiped another car just before the accident; and (4) that Wilkerson, immediately after the collision had a strong odor of intoxicants about him. Considering these facts that were available to Officer Herring immediately following the accident, probable cause existed to withdraw a blood sample from Wilkerson.

c.

¶16. The next issue for this Court to decide is whether the implied consent law of Mississippi rather than Tennessee, applies to a Mississippi law enforcement official's request to submit to blood alcohol tests after a driver was involved in an accident in Mississippi but transported to a Tennessee hospital. Wilkerson did not address this issue at trial. It is one that this Court has not addressed previously. Officer Herring crossed the Mississippi state line into Tennessee, where they were treating Wilkerson for injuries, to obtain the evidence in question, a blood sample.

¶17. Wilkerson argues that the officer lacked authority to enter a foreign jurisdiction to demand withdrawal of the blood sample. Wilkerson failed to raise this issue in the trial court. This Court has repeatedly held that before an issue may be assigned and argued in this Court, it must first have been presented to the trial court. *Read v. State*, 430 So. 2d 832, 838 (Miss. 1983). Where the issue has not been timely presented below, it is deemed waived. *Id.*

### III.

¶18. Wilkerson contends that his request for court appointed expert witnesses should have been granted and that the court was in err for denying the motion before trial, and after the trial. For there to be cause for reversal, "the trial court's denial of expert assistance must be an abuse of discretion 'so egregious as to deny [the defendant] due process and where [the defendant's] trial was thereby rendered fundamentally unfair.'" *Hunt v. State*, 687 So. 2d 1154, 1161 (Miss. 1996) (quoting *Fisher v. City of Eupora*, 587 So. 2d 878, 883 (Miss. 1991)). Mississippi case law states expert assistance should be granted upon a showing of substantial need. *Butler v. State*, 608 So. 2d 314, 321 (Miss. 1992). "'Undeveloped assertions' of helpfulness to the defense are insufficient to show that need." *Holland v. State*, 705 So. 2d 307, 333 (Miss. 1997). Some factors to be considered in determining if the defendant was denied a fair trial when the court did not appoint a requested expert include (1) the degree of access the defendant has to the state's experts; (2) whether those experts were available for rigorous cross-examination; (3) the lack of prejudice or incompetence by the state's expert. *Fisher v. City of Eupora*, 587 So. 2d 878, 883 (Miss. 1991) (*citing Johnson v. State*, 476 So. 2d 1195, 1203 (Miss. 1985)).

¶19. In the present case, the trial court overruled Wilkerson's Motion for Appointment of an Expert Witness but allowed the defense the opportunity to depose all of the state's witnesses. The trial judge also gave Wilkerson's attorney an opportunity to come back before the Court as an "officer of the Court," if he felt that he had to have some input on the issues set forth in the deposition of the state's expert. The record reflects that no showing was made by Wilkerson that a publicly funded expert was necessary. The trial court further stated that it may give payment for one (1) or two (2) hours if there was additional minimal help needed. When asked during trial if they needed minimal consultation, the defense clearly answered negatively. The record is replete with attempts to allow Wilkerson access to the state's expert. The defense argues that while the depositions were helpful in allowing the defense to cross-examine the state's expert witness, what they needed was an expert witness for the defendant to testify regarding the testing procedures and extrapolation issue.

¶20. Wilkerson fails to show where the absence of an appointed expert witness has prejudiced him. He also fails to make an argument that the state's expert was incompetent. Wilkerson fails to establish that the circuit court wrongfully denied him an expert based on all three factors cited in *Fisher*. He also fails to demonstrate a substantial need for the appointment of an expert. The only reason he proffers is that an

expert would have testified regarding the testing procedures and the extrapolation issue.

¶21. Wilkerson relies on *Hedrick v. State*, 637 So. 2d 834, 837 (Miss. 1994). In *Hedrick*, the driver claimed that he consumed alcohol in the time between his accident and giving his blood sample. Reliance on that case is misplaced because there is no evidence that Wilkerson drank after the accident, as did the defendant in Hedrick. Instead, the record evidence suggests that Wilkerson, who was injured in the wreck and taken to the hospital thereafter, was intoxicated before the accident. Having failed his burden to prove that his trial was rendered fundamentally unfair because of the court's denial of an appointed expert, this contention fails.

## IV.

¶22. Wilkerson argues that his conviction under Miss. Code Ann. § 63-11-30(4), as amended, violated his due process rights in that he was sentenced to a longer prison sentence for a lesser included crime. Wilkerson was indicted July 11, 1996, for "willfully, unlawfully, and feloniously, knowingly, and intentionally operating a motor vehicle while under the influence of intoxicating liquor and/or other substance which impaired his ability to operate said vehicle, and did thereby, in a negligent manner, cause the death of Juanita Wilson, in direct violation of § 63-11-30(4), Miss. Code 1972 Annotated as amended." The elements of the criminal conduct defined by § 63-11-30(4) may be extracted and enumerated as: 1) operating a vehicle while under the influence of intoxicating liquor, or operating a vehicle with ten one-hundredths percent (.10%) or more by weight volume of alcohol in the person's blood; and, 2) causing the death of another in a negligent manner. *Hedrick v. State*, 637 So. 2d 834, 837 (Miss. 1994).

¶23. Wilkerson faced the charge of DUI homicide as opposed to manslaughter. He raises an issue that is irrelevant. The charge of DUI homicide was the only charge brought against Wilkerson. Therefore, the term "lesser included offense" is incorrectly used in this brief. While when it was first enacted "DUI homicide" carried a smaller potential penalty than manslaughter and could under certain circumstances have been considered a lesser-included-offense to manslaughter there is nothing which compels it to retain that status. It is now and has always been a free standing criminal offense. The fact that it now carries a criminal sanction greater than that for manslaughter creates no constitutional infirmity. Thus, appellant's assignment of error has no merit.

## V.

¶24. In his Fourth assignment of error, Wilkerson argues that the trial court erred in refusing jury instructions D-1, D-2, D-4, D-6, D-9, and D-10. We handle each instruction separately.

¶25. "In determining whether error lies in the granting or refusal of various instructions, the instructions actually given must be read as a whole. When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found." *Coleman v. State*, 697 So. 2d 777, 782 (Miss. 1997) (quoting *Collins v. State*, 691 So. 2d 918 (Miss. 1997)).

¶26. Wilkerson's contention that the trial court refused to grant his jury instructions D-1 and D-2, requests for directed verdicts of acquittal, will be addressed in section VI of this opinion. D-1 instructed the jury to find Wilkerson not guilty, while D-2 instructed the jury to find Wilkerson not guilty of driving while under the influence negligently causing the death of another.

a.

¶27. Wilkerson maintains that Instruction D-4 is necessary for the jury to be properly instructed regarding the elements of the crime at issue. Jury Instruction D-4 reads:

"Negligence is the failure to use reasonable care. Reasonable care is that degree of which a reasonably careful person would use under like or similar circumstances. Negligence may consist either of doing something that a reasonably careful person would not do under similar circumstances, or of failing to do something that a reasonably careful person would do under like or similar circumstances.

You are instructed that the Defendant is not liable for all injuries that flow from his negligence, but only for those that could have been reasonably foreseen and anticipated. The injuries suffered by victim must result from a chain of a natural and unbroken sequence from Defendant's negligent act. However, the Defendant is not liable for damages which are remote or collateral, or which result from a remote, improbable or extraordinary occurrence, although such occurrence is within the range of possibilities flowing from Defendant's negligent act.

An element, or test, of proximate cause is that an ordinarily prudent man should reasonably have foreseen that some injury might probably occur as a result of this negligence. It is not necessary to foresee the particular injury, the particular manner of the injury, or the extent of the injury. In order to be a proximate cause, the negligence of Defendant must be a substantial factor in producing the victim's death. If the victim would have been injured even if the Defendant had not been negligent, the Defendant's negligence is not a substantial factor and not a proximate cause."

¶28. The trial court gave Instruction 9 defining negligence, which is identical to paragraph one of D-4. The balance of D-4 spoke to the issue of proximate cause. While no other instruction spoke to this issue the failing is not fatal to the verdict here. First, counsel made no specific reference to proximate cause and failed to attack the state's instructions for the absence of a requirement that proximate cause be found. Perhaps this is so because there was no real issue of proximate cause in this case. Clearly, the victim died as a result of the accident and the accident was caused by the defendant's negligence. The only issue here was whether there was proof beyond a reasonable doubt that the defendant was operating the vehicle in violation of the drunk driving statute. Moreover, the instruction given clearly required the jury to find that the defendant negligently caused the victim's death. Finally, the instruction proffered was confusing and abstract. Thus, while defendant was entitled to an instruction on proximate cause, for the forgoing reasons the failure to give the instruction proffered was not reversible error.

b.

¶29. Wilkerson claims that Jury Instruction D-6 is a proper statement of the law. Its purpose is to keep the jury from assuming negligence without the state establishing the elements required. Jury Instruction D-6 states, "As a general rule, the mere fact that an accident has occurred is not, of itself, evidence of negligence on the part of anyone." The use of that instruction in the instant case, however, is extraneous in light of the facts. The accident occurred in Wilkerson's oncoming lane. Accidents of this type, barring additional factors out of the driver's control, do not normally occur but for the negligence of a party. Wilkerson did not introduce any evidence of a collateral factor that forced him into the lane of oncoming traffic. Absent additional evidence, there are no circumstances that would allow a reasonable juror to conclude that neither party was negligent. As a result, Jury Instruction D-6 is not warranted and was properly refused by the trial

court.

c.

¶30. Wilkerson asserts that the lower court erred in refusing Jury Instruction D-9, which reads:

"The law in the state of Mississippi requires that the operator of any motor vehicle involved in an accident that results in a death shall be tested for the purpose of determining the alcohol content or drug content of such operator's blood. The law further requires the following: (1) the blood test shall be administered at a hospital if the operator is alive; and (2) the attending physician must deem that the drawing of a blood sample is clinically permissible; and (3) the blood test shall be administered by a physician, mortician, registered nurse, clinical laboratory technologist or clinical laboratory technician; and (4) the test shall be administered within two (2) hours after such accident, if possible, (5) to the extent possible the exact time of the test shall be recorded. In this case, the following violations of the law occurred: (A) No physician deemed the drawing of blood clinically permissible; (B) The blood test was not administered within two hours and said test was possible within two hours; (C) The blood test was performed at the Mississippi Crime Laboratory rather than a hospital. The jury, as the trier of fact, is sole judge as to the weight to be given these violations and should evaluate the credibility of the testimony in light of the weight given to such violations."

¶31. The first part of the instruction summarized the statute and pointed out possible violations of the law. This instruction charges the jury to contemplate the testing procedures set forth in § 63-11-8. This instruction is barred by the principles set forth in *Sudduth v. State*, 562 So. 2d 67, 72 (Miss. 1990), in which this Court has repeatedly condemned confusing and misleading instructions. Instruction D-9 would have confused the jury because the state maintains and this Court agrees that the officer obtained the blood sample from Wilkerson because he had probable cause to do so, not pursuant to § 63-11-8. In that the state's actions were based on probable cause, this instruction is irrelevant to this matter.[3]

d.

¶32. Wilkerson finally argues that the court wrongfully denied Jury Instruction D-10. The trial court amended and accepted this instruction without an objection by Wilkerson's attorney. In the instant case, Wilkerson's attorney allowed the court to alter Jury Instruction D-10 and offer it to the jury as Instruction 12. The Court views the absence of any objection to this altered Jury Instruction as a waiver from Wilkerson. *See Carr v. State*, 655 So. 2d 824, 851 (Miss. 1995). This is especially so here, where the amended instruction is not substantially different from the proffered one. The lower court was correct in denying Jury Instructions D-1, D-2, D-4, D-6, D-9, and D-10.

**VI.**

¶33. Wilkerson argues that the Court erred in failing to grant his Motions for Directed Verdict and Judgment Not Withstanding the Verdict. The standard of review for a denial of a judgment notwithstanding the verdict and a directed verdict are identical. The Court has held the standard of review as the following:

[T]his Court will consider the evidence in the light most favorable to the appellee, giving that party the benefit of all favorable inference that may be reasonably drawn from the evidence. If the facts so considered point so overwhelmingly in favor of the appellant that reasonable men could not have arrived at a contrary verdict, we are required to reverse and render. On the other hand if there is

substantial evidence in support of the verdict, that is, evidence of such quality and weight that reasonable and fair-minded jurors in the exercise of impartial judgment might have reached different conclusions, affirmance is required.

*Steele v. Inn of Vicksburg, Inc.*, 697 So. 2d 373, 376 (Miss. 1997) (quoting *Sperry-New Holland, a Div. of Sperry Corp. v. Prestage*, 617 So. 2d 248, 252 (Miss. 1993).

¶34. Wilkerson cites *Hedrick v. State*, 637 So. 2d 834, as controlling in the instant case. In *Hedrick*, the state failed to put on testimony that the suspect was drinking before his accident. Wilkerson attempts to draw similarities between *Hedrick* and his own case. The defendant in *Hedrick* testified that he had nothing to drink before the wreck, but he subsequently drank a half-pint of gin after the wreck and before his blood was withdrawn for analysis. *Id.* at 836. Wilkerson argues that in *Hedrick* there were no witnesses to testify that they saw Hedrick drink, stumble, hear his speech slur, or exhibit any other indication that he had been intoxicated or had been drinking. This Court held in *Hedrick*, "[T]here was absolutely no evidence advanced at the trial from which the jury could have reasonably concluded that Eddie [Hedrick] was legally intoxicated at the time his automobile struck [the victim]. Therefore, the State failed to prove the element of intoxication."*Id*. at 838.

¶35. In the present case, Wilkerson did not testify that he was drinking between the time of the accident and the time of him giving a blood sample. Further, Wilkerson had no opportunity to drink as medical personnel took him to the hospital shortly after the accident. There was testimony nevertheless that Wilkerson was driving recklessly shortly before the accident. Testimony from witnesses on the scene stated that the defendant had alcohol on his breath. The state has established through testimony of many individuals that Wilkerson appeared drunk shortly after the accident.

¶36. There is no evidence from which a reasonable juror could infer that Wilkerson had anything to drink after the accident, which leaves the only reasonable inference that the defendant was drinking intoxicants before the fatal collision. The evidence so considered is not such that reasonable and fair-minded jurors could only find the accused not guilty. The trial court did not err in following the principle set forth in *Steele*. The decision of the trial court to overrule the defendant's Motion for Directed Verdict and Motion for Judgment Not Withstanding the Verdict is affirmed.

## VII.

¶37. The Appellant argues that the sentence he received is "manifestly disproportionate" to the crime committed and therefore requires extended proportionality analysis under the 8[th]Amendment. The law of this state holds that sentencing is within the complete discretion of the trial court and is not subject to appellate review if it is within the limits prescribed by statute. *Hoops v. State*, 681 So. 2d 521, 537 (Miss. 1996). The general rule in this state is that this Court cannot disturb a sentence on appeal so long as it does not exceed the maximum term allowed by statute. *Id*. at 538. The sentence given by the trial court was clearly within the boundaries of the statute. Section 63-11-30(4) of the Mississippi Code, provides a maximum sentence of twenty-five (25) years' imprisonment. The sentence received by Wilkerson was twenty (20) years' imprisonment with the last two (2) years suspended, pending the defendant's good behavior.

¶38. The appellant attempts to apply the three prong test found in *Solem v. Helm*, 463 U.S. 277, 292 (1983), to determine if Wilkerson received a disproportionate sentence. However, *Solem* was overruled

by *Harmelin v. Michigan*, 501 U.S. 957, 965-66 (1991) to the extent that it found a guarantee of proportionality in the Eighth Amendment. *Hoops v. State*, 681 So. 2d 521, 538 (Miss. 1996). "'In light of *Harmelin*, it appears that *Solem* is to apply only when a threshold comparison of the crime committed to the sentence imposed leads to an inference of 'gross disproportionality.'" *Id.* at 538 (quoting *Smallwood v. Johnson*, 73 F. 3d 1343, 1347 (5th Cir. 1996)).

¶39. This Court in *Hoops* employed the threshold comparison. In that case, the eighteen-year-old defendant was sentenced to thirty years' imprisonment with a possibility of parole for shooting two rival street gang members. The trial judge was statutorily empowered to sentence Hoops to twenty (20) years imprisonment for each count but failed to do that. This Court found that the facts did not lead to the conclusion that the defendant received a sentence grossly disproportionate to his crime. There is likewise no need for an extended proportionality review under *Solem* in this appeal. Wilkerson was found guilty of causing death to another while driving under the influence of intoxicating beverages. The statute offers a maximum penalty of twenty-five (25) years' imprisonment for this crime. The trial court sentenced Wilkerson to twenty (20) of the twenty-five (25) years which he was statutorily empowered to give. In light of the facts before this Court, there was no cruel, unusual, or disproportionate punishment administered to Wilkerson.

## VIII.

¶40. For the above-cited reasons, the judgment of the circuit court is affirmed.

¶41. **CONVICTION OF FELONY DUI AND SENTENCE OF 20 YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH THE LAST 2 YEARS SUSPENDED PENDING FUTURE GOOD BEHAVIOR; MAKE RESTITUTION OF $6,200.00 TO THE ESTATE OF JUANITA WILSON; MAKE RESTITUTION OF $12,000.00 TO CYNTHIA McGOWAN AND PAY ALL COSTS OF COURT AFFIRMED.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., ROBERTS, SMITH, MILLS AND WALLER, JJ., CONCUR. McRAE, J., NOT PARTICIPATING.**

1. This section states in pertinent part that,"Every person who operates a motor vehicle in violation of the provisions of subsection (1) of this section and who in a negligent manner causes the death of another . . . . shall, upon conviction, be guilty of a felony. . . . "

2. 63-11-8. (1) The operator of any motor vehicle involved in an accident that results in a death shall be tested for the purpose of determining the alcohol content or drug content of such operator's blood. Such blood test shall be administered at a hospital if the operator is alive and the attending physician deems that the drawing of a blood sample is clinically permissible. The blood test required by this section shall be administered only by a physician, mortician, registered nurse, clinical laboratory technologist or clinical laboratory technician and shall be administered within two (2) hours after such accident, if possible. The exact time of the accident, to the extent possible, and the exact time of the test shall be recorded. (2) If any investigating law enforcement officer has reasonable grounds to believe that a person is the operator of a motor vehicle involved in an accident that has resulted in a death, it shall be such officer's duty to see that a

blood test is administered as required by this section. (3) The results of a test administered pursuant to this section may be used as evidence in any court or administrative hearing without the consent of the person so tested. (4) No person may refuse to submit to a blood test required under the provisions of this section. 1995 Miss. Laws 540 § 4.

3. The trial court disallowed the last clause of the instruction on the grounds of jury nullification. This is an incorrect ground to refuse this instruction. The instruction speaks to the jury's consideration of violations of the prescribed procedure for taking blood pursuant to § 63-11-8. The procedure used in obtaining the evidence is a relevant and necessary concern for the jury to consider. If the search in this case was predicated on § 63-11-8, strict adherence to the blood withdrawal procedures by the officer would be very critical to the jury in determining the weight and credibility to give the blood evidence. The instruction does not attempt to persuade the jury to acquit the defendant regardless of the strength of evidence against him. This instruction only seeks to prompt the jury into examining the actions of the officer in obtaining the blood sample. Although the circuit court was incorrect in characterizing this instruction as a jury nullification instruction, it properly refused instruction D-9 as being confusing and inapplicable to the case and facts at bar.