310 So.2d 898 (1975)
Roy JACKSON, Jr.
v.
STATE of Mississippi.
No. 48429.
Supreme Court of Mississippi.
April 7, 1975.
Holcomb, Dunbar, Connell, Merkel & Tollison, H. Hunter Twiford, III, Clarksdale, for appellant.
A.F. Summer, Atty. Gen., by Wayne Snuggs, Special Asst. Atty. Gen., Jackson, for appellee.
Before GILLESPIE, ROBERTSON and SUGG, JJ.
SUGG, Justice.
Roy Jackson, Jr. was convicted of burglary and sentenced to serve five years in the penitentiary by the Circuit Court of Coahoma County.
On March 18, 1973 at approximately 1:00 a.m. John Hopkins, a patrolman for the Clarksdale Police Department, was on a routine "canine" patrol when he observed Jackson enter the Fair Deal Grocery by climbing through a window located approximately eight feet above ground level. Upon orders from the officer, Jackson emerged from the building through the same window and attempted to flee, but was stopped within a few feet when the officer's dog caught him by the leg. Jackson was first carried to a hospital for treatment which consisted of a tetanus shot and application of a band aid to his leg. *899 He was then carried to the police department where an intoximeter test was administered about 2:15 a.m.
Three other officers of the Clarksdale Police Department assisted in the investigation. According to one of them, Jackson, upon his return from the hospital claimed he was drunk, rubbed his eyes until they were red and faked drunkenness. Following this an intoximeter test was given resulting in a reading of .04 which, as explained by the officer giving the test, indicated an insufficient amount of alcohol in the blood to cause intoxication.
Jackson contends that his constitutional right to be secure from unreasonable searches and seizures was violated by the police when they gave him the intoximeter test and the result was therefore inadmissible in evidence. When the intoximeter test was given, Jackson had been lawfully arrested by the officer who observed him committing a crime in his presence. Mississippi Code Annotated section 99-3-7 (1972). No contention is made that the test was performed in an unreasonable manner or that it involved any personal risk of infection or pain.
The United States Supreme Court held that taking blood samples from a defendant did not violate his Fourth Amendment rights when he was lawfully arrested, or when probable cause existed for the intrusion of the defendant's body. Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); Breithaupt v. Abram, 352 U.S. 432, 77 S.Ct. 408, 1 L.Ed.2d 448 (1957). See also Cupp v. Murphy, 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973), in which the Court held that taking fingernail scrapings from one detained did not violate his Fourth Amendment rights where probable cause for his arrest existed.
The United States Supreme Court in Schmerber, supra, recognized that the percentage of alcohol in the blood begins to diminish shortly after drinking stops as the body functions to eliminate it from the system, and stated:
[W]e conclude that the attempt to secure evidence of blood-alcohol content in this case was an appropriate incident to petitioner's arrest. (384 U.S. at 771, 86 S.Ct. at 1836, 16 L.Ed.2d at 920).
Since Jackson was in lawful custody,[1] his right to be secure from an unreasonable search guaranteed by the Fourth Amendment of the United States Constitution and Section 23 of the Mississippi Constitution of 1890 was not violated by the officers when they administered the photoelectric intoximeter test which tests the breath of a person without intrusion into the body.
Jackson also contends that the police officers did not have the authority to administer the intoximeter test since it is only authorized under the Mississippi Implied Consent Law. Mississippi Code Annotated sections 63-11-1 et seq. (1972). He argues that the test may be administered under section 63-11-5 only to persons lawfully arrested, "... for any offense arising out of acts alleged to have been committed while the person was driving a motor vehicle on the public highways, public roads and streets of this state while under the influence of intoxicating liquor ..." or to dead or unconscious accident victims under the conditions prescribed by section 63-11-7.
Although Jackson was not arrested for an offense for which a sobriety test is authorized by the Mississippi Implied Consent Law, the police officers were using *900 good police procedure when they administered the test to determine the percentage of alcohol in his blood before it diminished. Jackson feigned drunkenness, but did not appear to the officers to be intoxicated, so the test was administered as a scientific indicator on the question of whether he was too drunk to form an intent to steal. The test was therefore an appropriate incident to Jackson's arrest.
Sobriety tests in criminal cases are not limited to cases which fall within the Mississippi Implied Consent Law, but may be administered and the results introduced in evidence, when sobriety or drunkenness is an issue. In the case at bar the evidence was relevant because Jackson's defense was that he was too drunk to form the intent to steal.
The other assignments of error deal with issues that have been settled by many decisions of this Court; therefore, further comment would not benefit the bench and bar.
Affirmed.
RODGERS, P.J., and PATTERSON, INZER, SMITH, WALKER, and BROOM, JJ., concur.
NOTES
[1] Although not in custody, one may consent to a sobriety test which involves the search of his person by intrusion therein. Cutchens v. State, Miss., 310 So.2d 273 (decided March 17, 1975); Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).