# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI
### NO. 95-KA-01103 COA

JOE FRANK HARDIN                                                    APPELLANT

v.

STATE OF MISSISSIPPI                                                  APPELLEE

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND MAY NOT BE CITED,
PURSUANT TO M.R.A.P. 35-B

| | |
|---|---|
| DATE OF JUDGMENT: | 08/31/95 |
| TRIAL JUDGE: | HON. JOSEPH H. LOPER JR. |
| COURT FROM WHICH APPEALED: | CHOCTAW COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | J. NILES MCNEEL |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: CHARLES W. MARIS JR. |
| DISTRICT ATTORNEY: | EVANS, DOUG |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CT I MURDER: CT II MURDER: CT I SENTENCED TO SERVE A TERM OF THE REMAINDER OF HIS NATUARL LIFE IN THE MDOC; CT II SENTENCED TO SERVE A TERM OF THE REMAINDER OF HIS NATURAL LIFE IN THE MDOC; CT II TO RUN CONSECUTIVE TO CT I |
| DISPOSITION: | AFFIRMED - 10/7/97 |
| MOTION FOR REHEARING FILED: | October 10, 1997 |
| CERTIORARI FILED: | 11/24/97 |
| MANDATE ISSUED: | 3/18/98 |

BEFORE BRIDGES, C.J., HINKEBEIN, AND KING, JJ.

BRIDGES, C.J., FOR THE COURT:

Joe Frank Hardin was indicted, tried, and convicted of two counts of murder in the Choctaw County Circuit Court. He was sentenced to serve a term of the remainder of his natural life in the custody of the Mississippi Department of Corrections for each count, with the sentences to run consecutively.

He presents the following issues on appeal:

I. THE COURT ERRED IN ALLOWING REPEATED REFERENCES TO DECEDENTS AS "VICTIMS".

II. THE COURT ERRED IN ADMITTING CUMULATIVE COLOR PHOTOGRAPHS OF THE BODIES OF TURNER AND POLLARD ALONG WITH IDENTICAL SLIDES OF THOSE PHOTOGRAPHS.

III. THE COURT ERRED IN NOT ALLOWING THE TOXICOLOGIST TO TESTIFY HOW THE BLOOD ALCOHOL CONTENT OF TURNER AND POLLARD RELATED TO DUI FOR COMPARISON PURPOSES.

IV. THE COURT ERRED IN GRANTING INSTRUCTION S-3 WHICH CUT OFF DEFENDANT'S RIGHT OF SELF-DEFENSE.

Finding no error, we affirm.

## FACTS

On October 15, 1995, Hardin left his house in the Greensboro community to cut firewood. Although Hardin was employed as a mechanic by Georgia-Pacific, he often cut wood for people on the weekends. However, on that particular day, Hardin's attempts to cut firewood were foiled by his mistakenly filling his chainsaw's gas tank with oil. After taking care of some other business, Hardin went to the home of Clarence Eiland where several other men were hanging around and talking. Among the group of men were, Stan Turner and Roger Pollard (a/k/a Nose). Hardin backed up his pickup truck beside Turner's and Pollard's car. While Hardin was talking to Eiland, he felt something bump his pickup and noticed Turner and Pollard standing on the opposite side of the bed of his truck looking at him. Subsequently, Hardin saw Turner and Pollard pick up something off the ground and put it into their car. Turner and Pollard left and drove north, while Hardin went south. After going to the Ebenezer community to pick up the trailer that went on the back of his pickup, Hardin went to his brother's house. It was there that Hardin realized that his saw was missing from the bed of his truck. Hardin immediately suspected Turner and Pollard of stealing his saw. Hardin told his brother that he was going to find his saw. His first stop after returning to the spot where his saw was taken was Foster Glass's house. Hardin asked Glass if he knew where Turner lived. He told Glass that Turner and Pollard had stolen his saw and that if they did not still have it when he found them, he was going to shoot them. Glass saw a shotgun in Hardin's truck with the barrel pointed toward the floorboard. According to Glass, Hardin was very angry when he stated that he was going to shoot Turner and Pollard. Glass told Hardin to call the police, but Hardin replied that he would handle it.

As Hardin was traveling east on Church Road, he recognized the car that contained both Turner and

Pollard. He flagged the car down, and it pulled to the side of the road. Hardin pulled his truck and trailer beside the car. Hardin questioned the men about his saw. He grabbed his shotgun and got out of his truck. Hardin stated at trial that he put the gun in the truck earlier that morning. While Hardin was standing outside of his truck, he loaded his shotgun. He never saw either man with a weapon. When Hardin saw Turner reach under the car seat, he fired a warning shot with his shotgun. Hardin told him to get out of the car. With both men out of the car, Hardin looked to see if they had his saw. At some point, Hardin fired another warning shot into the ground.

Pollard then offered Hardin $40 for his saw. Turner, however, denied taking the saw and according to Hardin, began cursing and walking towards him. Hardin shot Turner. He then turned and shot Pollard. Hardin shot each man twice. He testified that he was afraid of them. After shooting the two men, Hardin picked up the spent shells and went home. That night, he attended a Lodge meeting. The next morning he went squirrel hunting.

Julia James, acting director of the Mississippi Crime Lab in Jackson, was called to Choctaw County on October 16, 1995. When she arrived at the scene, she saw an older model blue car and two dead bodies on the side of the road. Turner had been shot in the back of his head as well as the center portion of his back. Pollard had been shot in the stomach and his back left shoulder. He also had an injury to his hand. Two twenty dollar bills were found on the ground next to Pollard.

Pathologist Dr. Emily Ward conducted the autopsies on Turner and Pollard. Both men died as the result of gunshot wounds. The fatal shots were fired from between five and ten feet.

Sheriff Mike Hutchinson arrested Hardin the day after the shootings. After the sheriff read Hardin his rights, Hardin replied that he had expected the sheriff the day before. He told the sheriff that he went looking for them because they stole his saw. When they did not have it, he shot them. Hardin told the sheriff where the gun was and let the law enforcement officers search his house. The gun Hardin used to kill Turner and Pollard was a Remington 870 pump, 12 gauge. The following is Hardin's written statement:

Yesterday I saw Stanley Turner and Roger Pollard on Turnipseed Road in Winston County. They were messing around my truck and I saw my saw was missing. I know they got my saw out of my truck. I went looking for them. I stopped at a Glass fellow's house and asked where Stanley lived and he told me. I asked a woman where Stanley lived near his house. Stanley was not home, so I started looking for him and Roger Pollard.

I found them and blocked the road with my trailer. Stanley got out and I got out and loaded my shotgun. Then Roger Pollard got out. They said they pawned my saw for $100. We talked a little bit and Stanley started towards me and I shot Stanley and he turned and I shot him again. I shot Roger Pollard twice.

I saw a truck turn before I shot both of them. I think it was a brown truck.

After I shot them I left. The gun I used was a 12-gauge pump, 870 Remington. Pollard wanted to give me $40 he had in his hand.

After the shooting I went home and went squirrel hunting. They were in a blue or green Maverick.

All I know their names were Stan and Nose.

I was expecting the law to come to my house last night. After I shot them I did not touch them. I just drove off.

I went squirrel hunting this morning and killed three squirrels. I had just turned right on the road I shot them on. I don't know if I was shooting 4, 5 or 6 shot. I used the same shells I use squirrel hunting.

## I. THE COURT ERRED IN ALLOWING REPEATED REFERENCES TO DECEDENTS AS "VICTIMS".

During her testimony, Julia James, acting director of the Mississippi Crime Lab in Jackson, referred to Turner and Pollard as "victims" (but not "murder victims"). After several such references, Hardin objected, stating, "That presupposes what we're about here. So I object to that characterization." The State replied that anyone found shot, lying in a ditch is a victim. Hardin argued that the men were deceased, but not necessarily victims. The trial court overruled the objection, holding that it was a question of semantics and that there was no harm created by the deceased's characterization as victims. On appeal, Hardin argues that the label of "victim" implies that one is an innocent party wrongly acted upon. He argues that the accepted definition of victim is one who is the object of a criminal act. While Black's Law Dictionary 1657 (6th ed. 1990) does define victim as one "who is the object of a crime or tort," we are not persuaded that the ordinary meaning of victim implies the involvement of a crime. For example, Webster's Ninth New Collegiate Dictionary 1314 (9th ed.1990) defines victim as "one that is acted on and usually adversely affected by a force or agent" or "one that is injured, destroyed, or sacrificed under any of various conditions." Additionally, J.I. Rodale's Synonym Finder 1318 (ed. 1986) gives the following words for victim: "sufferer, injured one or party, receiver." Hardin has failed to show how the trial court committed error, or how he was prejudiced. This issue is meritless.

## II. THE COURT ERRED IN ADMITTING CUMULATIVE COLOR PHOTOGRAPHS OF THE BODIES OF TURNER AND POLLARD ALONG WITH IDENTICAL SLIDES OF THOSE PHOTOGRAPHS.

As an aide in explaining her testimony about the appearance of the crime scene, Julia James referred to several color photographs of the victims. In addition to the photographs, color slides were introduced, showing the bodies and the crime scene from different angles and positions. Hardin objected to the introduction of these slides, stating that they were unnecessary and inflammatory. James testified that the photos and slides were taken from different angles and did not show the same body position or crime scene area. Additionally, the pictures were taken based on her training of crime scene investigations.

The trial court viewed the slides outside the presence of the jury and ruled that they differed from the

photos. Overruling the objection, the trial court held that the probative value of the slides and photographs outweighed any prejudicial effect. Moreover, the trial court stated that it failed to find any of the slides and photographs the least bit prejudicial or inflammatory.

The standard of review of the admission or exclusion of photographs is well established. The Mississippi Supreme Court recently stated:

It is well settled in this state that the admission of photographs is a matter left to the sound discretion of the trial judge and that his decision favoring admissibility will not be disturbed absent a clear abuse of that judicial discretion . . . . A photograph, even if gruesome, grisly, unpleasant or even inflammatory, may still be admissible if its introduction into evidence serves a meaningful evidentiary purpose.

*Hart v. State*, 637 So. 2d 1329, 1335 (Miss. 1994) (citations omitted). Hardin has failed to prove that the trial judge abused his discretion or that any prejudice resulted. The trial court did not abuse its judicial discretion, and this issue has no merit.

III. THE COURT ERRED IN NOT ALLOWING THE TOXICOLOGIST TO TESTIFY HOW THE BLOOD ALCOHOL CONTENT TO TURNER AND POLLARD RELATED TO DUI FOR COMPARISON PURPOSES.

As part of his defense, Hardin presented Michael Weaver, a forensic toxicologist. The trial court allowed Weaver to testify to the alcohol content of the victims's blood. Turner had a .27% blood alcohol level, and Pollard had a .17% blood alcohol level. Hardin wanted Weaver to compare the victims's blood alcohol level to the .10% blood alcohol level required for arrest under DUI in order to prove that Turner and Pollard were acting crazy. However, the trial court refused to allow any testimony regarding possible DUI readings. The trial court stated that it was not relevant or appropriate for the toxicologist to compare the victims's blood alcohol level to that of anyone else's. Hardin argues that sobriety tests and their results may be introduced at trial whenever sobriety or drunkenness is at issue. *Jackson v. State*, 310 So. 2d 898 (Miss. 1975). There is no such issue in the instant case. Moreover, there were no field sobriety tests taken; the victims had been dead for at least twenty-four hours before their blood was tested.

Mississippi Rule of Evidence 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." M.R.E. 401. The fact that the victims may have been driving under the influence has nothing to do with the issues in the case at hand. The exclusion of evidence because of relevancy is left to the trial judge's discretion. *Sperry-New Holland v. Prestage*, 617 So. 2d 248, 260 (Miss. 1993). "Great deference is given to a trial court's decision on the admission or exclusion of evidence due to relevance." *Id.* We find no error in the trial court's decision to exclude the testimony relating to DUI alcohol levels. The trial court did not abuse its discretion.

IV. THE COURT ERRED IN GRANTING INSTRUCTION S-3 WHICH CUT OFF DEFENDANT'S RIGHT OF SELF-DEFENSE.

The following so-called arming instruction, though objected to in the trial court, was given:

The Court instructs the jury that one who arms himself with a deadly weapon for the purpose of initiating an altercation and who intends to and does use his weapon on his adversary can not claim self defense, [sic] therefore if you find from the evidence in this case beyond a reasonable doubt that the defendant, Joe Frank Hardin, armed himself with a shotgun for the purpose of initiating an altercation with Roger Pollard and/or Stanley Turner and intended to and did use his weapon to shoot the said Roger Pollard and Stanley Turner then the law does not allow the defendant to claim self defense.

In his very brief argument on appeal, Hardin claims that the instruction should not have been given because Hardin already had the shotgun in his truck; therefore, he could not have armed himself.

The Mississippi Supreme Court has stated that it is a rare case where an arming instruction is allowable because it cuts off the defendant's right to self defense. *Hart v. State*, 637 So. 2d 1329, 1337 (Miss. 1994). The purpose of an arming instruction is "to inform the fact-finder that one cannot arm himself in advance when he is not in any physical danger, go forth and provoke a confrontation or difficulty with another, shoot the other, and then attempt to hide behind a smoke screen of self-defense." *Id.* In *Hart*, the defendant armed himself with a shotgun and drove to the victim's house where he proceeded to shoot him without any provocation. *Id.*

In the present case, Hardin sought out Turner and Pollard with the express intent of shooting them. He told Foster Glass that if the two men did not have his saw, he was going to shoot them. Hardin ignored Glass's plea to involve the police. When Hardin finally caught up with Turner and Pollard, he got out of his car, grabbed his shotgun, and proceeded to load it. He never saw either man with a weapon, nor did he testify to any danger from the men except that he thought they were acting crazy. When he realized the men did not have his saw, he shot them, twice each. The autopsy reports indicated that both men received fatal shots to the back. The evidence shows that Hardin sought Turner and Pollard with a mind to shoot them, he loaded his shotgun upon meeting them; and he shot them with no threat of imminent danger. Although we agree with the supreme court that it is a rare case where the facts actually allow an arming instruction, we feel that this is indeed one of those cases. Nonetheless, we reiterate the supreme court's warning: "A caveat is clearly in order. This instruction and others like it are fraught with danger. When the State seeks this instruction, it

does so at its own peril." *Id.* at 1338 (citations omitted). The trial court did not err in granting the arming instruction.

**THE JUDGMENT OF THE CHOCTAW COUNTY CIRCUIT COURT OF CONVICTION OF TWO COUNTS OF MURDER, AND SENTENCE OF LIFE ON EACH COUNT IN THE**

**CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH SENTENCE IMPOSED IN COUNT II TO RUN CONSECUTIVELY TO SENTENCE IN COUNT I AND SENTENCE IN COUNT I TO RUN CONSECUTIVELY TO ANY OTHER SENTENCE PREVIOUSLY IMPOSED IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO CHOCTAW COUNTY.**

**McMILLIN AND THOMAS, P.JJ., COLEMAN, DIAZ, HERRING, HINKEBEIN, KING, PAYNE, AND SOUTHWICK, JJ., CONCUR.**