592 So.2d 16 (1991)
Danny LONGSTREET
v.
STATE of Mississippi.
No. 90-KA-0474.
Supreme Court of Mississippi.
November 27, 1991.
Dissenting Opinion December 18, 1991.
Robert T. Laster, Jr., Carothers Fedric & Laster, Grenada, for appellant.
Mike C. Moore, Atty. Gen., Deirdre McCrory, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before DAN M. LEE, P.J., and SULLIVAN and PITTMAN, JJ.
Dissenting Opinion of Justice McRae December 18, 1991.
DAN M. LEE, Presiding Justice, for the Court:
This appeal derives its factual basis from a tragic set of circumstances which underscores the horror of an unfortunate, yet familiar societal menace. Three people are dead. The quality of life for a fourth person, the appellant (who received a 27-year penitentiary sentence), is severely diminished. Once again, an overindulgence in alcohol is adjudicated the culprit.
Danny Longstreet was indicted on three counts of manslaughter[1] for the deaths of James H. McNeer, Bessie Mae McNeer and Amy Michele Anthony. Following a trial by a jury of his peers, Longstreet was found guilty on all three counts, and the court sentenced Longstreet to three (3) consecutive nine (9) year terms to the Mississippi Department of Corrections. Feeling aggrieved, Longstreet now appeals his convictions to this Court alleging error in the admission of a blood alcohol test result which revealed that Longstreet had a blood *17 alcohol content of .13.[2] Finding no error in the admission of Longstreet's blood alcohol test result, we affirm his convictions for the crime of manslaughter and corresponding sentences.

FACTS
On the early afternoon of May 20, 1989, Danny Longstreet was traveling alone in a 1975 blue Pontiac from Greenwood to Grenada on Highway 8. Mr. James H. McNeer and Mrs. Bessie Mae McNeer were on the front seat of their 1982 Ford Grenada traveling in the opposite direction. Two of the McNeers' granddaughters were on the back seat, and a third child, Amy Michele Anthony, was seated in the middle on the back seat.
Just west of the city limits of Grenada, Danny Longstreet's blue Pontiac collided head-on with the McNeers' Ford Grenada. One of five eyewitnesses described the collision as follows:
A. I looked up, and there was a car come over in my lane about a hundred yards ahead of me. And he never moved back over and never run off the road or nothing. He just got in my lane and was coming straight toward us. He got within four or maybe five car lengths from us, and I seen he wasn't moving, and so I run off the road, and he hit the car behind us head-on.
It was a cloudy day, but the road condition was dry. At the place of impact, the highway was straight and level. Mr. James H. McNeer, age 62, and his wife, Mrs. Bessie Mae McNeer, age 63, both of Holcomb, were killed instantly. Amy M. Anthony, of Grenada, a 14 year old friend to the McNeers' granddaughters, lived for approximately three hours before she died in a Memphis hospital. The McNeers' granddaughters survived the crash.
At this point, we find little or no benefit in recounting the tragic details of the collision and its aftermath. Therefore, we summarize much of the trial testimony as follows.
For his defense, Longstreet presented evidence to suggest that mechanical failure in the front end of his vehicle was the cause for the head-on collision. The State presented the testimony of five (5) eyewitnesses who observed events which preceded the collision as well as the collision itself. While some of the testimony corroborated Longstreet's allegation of mechanical trouble in the front end of his Pontiac, there was also compelling eyewitness testimony which indicated that Longstreet was driving in an intoxicated condition.[3]
For the question that we consider today, our focus in on the testimony of Officer Charles Rose, a state trooper who testified at the hearing on Longstreet's motion to suppress the results of the blood alcohol test.
Officer Rose was among the first to arrive at the scene of the accident, and he investigated for approximately an hour to an hour and a half before he went to the Grenada Lake Medical Center where Longstreet was being treated for minor injuries. When Officer Rose arrived at the hospital to see Longstreet, he knew that Longstreet was the driver of the blue Pontiac which collided head-on with the McNeers' Ford. *18 He also knew that Mr. and Mrs. McNeer were dead and that the children were in very serious condition. Furthermore, Officer Rose observed certain characteristics which made him suspect that Longstreet had been drinking.
Q. What information did you have with respect to alcohol at the time?
A. I believe there was a beer can in the vehicle, and at the hospital I noticed the pupils of his eyes were dilated. He had slurred speech.
Q. Did you smell anything about his breath?
A. I didn't attempt to smell his breath.
Even though Officer Rose suspected that Longstreet had been drinking alcohol, the officer asked Longstreet for his consent to draw a blood sample for a blood alcohol and drug screen test. At the pre-trial suppression hearing, Officer Rose described Longstreet's consent to the blood sample.
Q. What happened with respect to Danny Longstreet at the Grenada Lake Medical Center?
A. I asked for consent to draw blood for blood alcohol and drug screen.
Q. Who did you ask to give that consent?
A. I asked Danny Longstreet.
Q. How did you ask him?
A. I just asked him if he would give consent for a blood test to determine his blood alcohol content.
Q. What did he say?
A. He gave consent.
Q. And how did he  do you have anything that shows that he gave consent?
A. YES. I have a form signed by Longstreet in the presence of Registered Nurse Jean Aldy, which drew the blood.
Registered Nurse Jean Aldy drew the blood sample. She testified that she could smell alcohol on Longstreet and that his demeanor was, "loud, obnoxious and belligerent."
Officer Rose did not arrest Longstreet at the hospital. Longstreet was not arrested until the grand jury returned an indictment which was several weeks after the results of the blood test revealed a blood alcohol content of .13. Officer Rose testified that it was common practice to await the blood alcohol test results from the crime lab in Jackson before seeking an indictment in such cases.
At the pre-trial suppression hearing, Longstreet challenged the validity of his consent to the blood sample since he was unaware that he had a constitutional right to refuse Officer Rose's request to withdraw a sample of blood. The trial judge ruled against Longstreet, and the test results were admitted into evidence at trial. The trial judge found that notwithstanding any question concerning the validity of Longstreet's consent, that Officer Rose had probable cause to withdraw a sample of Longstreet's blood for alcohol analysis and drug screen testing.

ANALYSIS
Longstreet's contention on appeal is that the consent which he gave for the blood sample is invalid under this Court's holding in Penick v. State, 440 So.2d 547 (Miss. 1983). Therefore, Longstreet alleges error in a ruling of law by the trial judge wherein the results of his blood alcohol test were admitted into evidence. Our review on questions of law is de novo. Harrison County v. City of Gulfport, 557 So.2d 780, 784 (Miss. 1990); Cole v. National Life Ins. Co., 549 So.2d 1301, 1303 (Miss. 1989); Boggs v. Eaton, 379 So.2d 520, 522 (Miss. 1980).
Initially, it should be noted that the State argues that Longstreet has not preserved his one issue for appeal. In this light, the State asserts that since Longstreet did not use the term "Fourth Amendment," at the suppression hearing, then he has not preserved a search and seizure question for this Court's review. The State's contention has no merit. Despite Longstreet's use or not of the magic words, "Fourth Amendment," or "Section 23," there is no doubt that Longstreet is seeking protection of his right to be free from unreasonable searches and seizures as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution and Article 3, Section 23 of the *19 Mississippi Constitution of 1890. His objection is extremely apparent from the context. Hooker v. State, 516 So.2d 1349, 1354 (Miss. 1987). Longstreet's allegation of error is preserved for our review, and now on to the merits of the case.
In Penick v. State, this Court reiterated the rule that in this State, valid consent to an otherwise illegal search must be accompanied by a knowledgeable waiver of a person's constitutional right not to be searched. Penick v. State, 440 So.2d 547, 551 (Miss. 1983) (emphasis added). See Quan v. State, 185 Miss. 513, 520, 188 So. 568, 569 (1939) ("A party, when he knows that a proposed search would be illegal, may waive the illegality and consent to the search; and when he does he may not thereafter complain of its illegality."); Smith v. State, 133 Miss. 730, 736, 98 So. 344, 345 (1923) (in order to waive rights, one must be cognizant of rights in premises). In other words, for a search which is based on consent alone, it is necessary that the person searched be aware of the right to refuse under the law. Penick, 440 So.2d at 550, 551. Penick held that in the absence of a knowledgeable waiver, such search violated section 23 of the state constitution.[4]Penick, 440 So.2d at 551. Specifically, Longstreet alleges that Officer Rose's failure to inform him that he had a right to refuse the request for a blood sample taints the consent which he gave thereby rendering the test results inadmissible.
Blood alcohol tests have a substantial history in Fourth and Fifth Amendment constitutional law as well as in state constitutional considerations interpreted by this Court. We begin with the basics and build from there.
In Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), the United States Supreme Court recognized that blood alcohol tests, although substantially invasive, are not violative per se of the accused's rights to be free from unreasonable searches and seizures under the Fourth Amendment. Schmerber, 384 U.S. at 772, 86 S.Ct. at 1836, 16 L.Ed.2d at 920. Seven years later, the United States Supreme Court decided Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). In interpreting the Fourth and Fourteenth Amendments to the United States Constitution, the United States Supreme Court held that while knowledge of a right to refuse consent to a blood alcohol search is a relevant factor in assessing the voluntariness of consent, the State need not prove that the subject who consented to the search knew that he had a right to withhold consent. Bustamonte, 412 U.S. at 249, 93 S.Ct. at 2059, 36 L.Ed.2d at 875.
However, Mississippi has its own judicial history in the area of blood sample searches in its application of Article III, Section 23 of the Mississippi Constitution. We begin with Cutchens v. State, 310 So.2d 273 (Miss. 1975). In Cutchens, appellant alleged that the extraction of a blood sample violated his Fourth and Fourteenth Amendment rights in that he did not execute an intentional relinquishment of a known right. Cutchens, 310 So.2d at 275. In other words, like Longstreet, Cutchens argued that his consent was invalid because he was not aware that he had a right to refuse the test. Citing Luton v. State, 287 So.2d 269 (Miss. 1973), this Court explained that the accused's lack of knowledge of his right to refuse a search was not the sole controlling factor in determining whether consent was voluntary. Cutchens, 310 So.2d at 275-76. Rather, it is the "totality of the circumstances" surrounding the consent which should be considered. Cutchens, 310 So.2d at 276. The Court went on to conclude that under the "totality of the circumstances" in this case, the State was not required to prove that Cutchens knew that he had a right to refuse the blood test. Cutchens, 310 So.2d at 310. It merits notice that the "totality of the circumstances" *20 in Cutchens consisted of the following. Cutchens was approached in the emergency room by a law officer who smelled alcohol on his breath. Cutchens admitted to drinking a few beers and consented to the blood sample. Cutchens, 310 So.2d at 275. Clearly, the smell of alcohol and appellant's admission of alcohol consumption furnished the requisite probable cause for the officer to obtain a blood sample from Cutchens.
Our next substantive discussion of blood alcohol searches came in Ashley v. State, 423 So.2d 1311 (Miss. 1983). Ashley is outcome determinative for the case sub judice and clearly controls. Ashley clarified that a non-custodial search for a blood sample based upon probable cause meets federal and state search and seizure constitutional standards. In Ashley, medical personnel had taken the blood sample for diagnostic purposes before it was requested by law enforcement authorities, but this distinction is of no moment in our interest of the case. Ashley, 423 So.2d 1311, 1313 (Miss. 1983). While the following quote is a lengthy one, it provides an excellent explanation of this Court's interpretation of search and seizure law as applied to blood alcohol searches, and it reveals why Ashley and its progeny control this case.
We first address appellant's Fourth Amendment claims. The United States Supreme Court in Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) held that taking blood samples from a defendant who had been lawfully arrested did not violate his Fourth Amendment rights. In Cupp v. Murphy, 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973) the Court held that taking fingernail scrapings from one detained did not violate his Fourth Amendment rights where probable cause for his arrest existed. The Cupp rationale has been extended in some jurisdictions to include the warrantless taking of a suspect's blood for analysis prior to arrest where probable cause existed and the circumstances dictated that the blood should be taken for a test. Aliff v. State, 627 S.W.2d 166 (Tex. Ct. App. 1982); State v. Campbell, [189 Mont. 107] 615 P.2d 190 (Mont. 1980); State v. Oevering, 268 N.W.2d 68 (Minn. 1978).
We find appellant had not been lawfully arrested when his blood was withdrawn for testing. However, our examination of the facts must not stop here. We must determine whether Officer Santacruz had probable cause to detain appellant and order a blood test after he went to the hospital. The facts in possession of the officer at that time were that Ashley was driving an automobile which had run into the rear end of another automobile which was stopped at a traffic signal, that an occupant of the stopped automobile had been killed in the accident, and in the opinion of the officer appellant was intoxicated. Under these facts the officer could then have arrested appellant on a charge of manslaughter and required appellant to submit to a test to determine the alcoholic content of his blood. At that time there existed probable cause for arrest and also probable cause to search appellant by requiring him to submit to the withdrawal of blood from his body to be tested.
The officer did not order another blood test because he had been advised that blood had been withdrawn from appellant and the test results were known to the officer.
The United States Supreme Court recognized in Schmerber, supra, that extraction of blood samples for testing is a highly effective means of determining the degree to which a person is under the influence of alcohol. It also recognized, as this Court did in Jackson v. State, 310 So.2d 898 (Miss. 1975), that the percentage of alcohol in the blood begins to diminish shortly after drinking stops as the body functions to eliminate alcohol from the system.
Information gathered at the accident scene and later at the hospital not only provided probable cause for appellant's arrest, but also indicated that appellant was probably intoxicated; hence, the need for a blood test. Under the facts of this case, we hold that appellant's Fourth Amendment rights were not violated, and *21 the result of the blood test administered at the direction of Dr. Wiggins was admissible in evidence. We hold that, where the state is justified in requiring a blood test to determine the alcohol content in a suspect's blood, and such test has in fact been performed, although for diagnostic and not for law enforcement purposes, the state is entitled to the benefit of the test results... .
Ashley v. State, 423 So.2d 1311, 1313-14 (Miss. 1983).
Turning now to the case at bar, we must examine the factors which prompted Officer Rose to request a blood sample from Longstreet.
First of all, the officer knew that Longstreet was the driver of an automobile which collided head-on with another vehicle on Highway 8. The collision occurred at a point where the highway was straight and level, and the road condition was dry. Officer Rose knew that at least two people were dead in the vehicle which Longstreet hit. The officer had also observed a beer can in Longstreet's Pontiac. Longstreet had slurred speech, and the pupils of his eyes were dilated. This was enough. Officer Rose had probable cause to obtain the blood sample, and he could have arrested Longstreet at the hospital. However, Longstreet was undergoing medical treatment, and Officer Rose stated that it was common practice to await the blood alcohol results before seeking an indictment in such cases. Ashley bound, Longstreet's assignment of error is without merit. Likewise, the trial judge recognized that independent of the question of consent, Officer Rose had probable cause for the search thereby making the search a legal one.
BY THE COURT: The Defendant has cited to the Court the Cole case. Let me note initially that the consent is sufficient to allow the introduction of this into evidence, but I will note for the Defendant that in the Cole case, the deputy in that case, while he smelled no odors he also did not observe any whiskey bottles or beer cans and nothing about the speech of the Defendant in the Cole case would have indicated that he is under the influence of alcohol. In this case, even absent of the consent that was given, it is the opinion of the Court that probable cause was sufficient for this officer to ask for a blood alcohol test.

(emphasis added).
Furthermore, Ashley has been faithfully followed since it was decided in 1983. See Whitley v. State, 511 So.2d 929, 931 (Miss. 1987) (Ashley followed); Gibson v. State, 503 So.2d 230, 233 (Miss. 1987) (same).
In Cole v. State, 493 So.2d 1333 (Miss. 1986), this Court cited Ashley with approval and noted that if the fruits of a warrantless blood search are to survive the exclusionary rule, then the search must have been predicated upon probable cause. Cole v. State, 493 So.2d 1333, 1335 (Miss. 1986). In Cole, this Court found that no probable cause existed where no odor of alcohol was present on the appellant; no alcohol containers were observed; and the appellant exhibited no behavioral signs of intoxication. Cole, 493 So.2d at 1335. Thus, the facts in Cole were quite different from the case at bar.

CONCLUSION
For a search which would otherwise be illegal, absent consent, knowledgeable waiver of one's constitutional right not to be searched remains a part of our jurisprudence guaranteed by Article III, Section 23 of the Mississippi Constitution of 1890. However, blood searches which are based upon probable cause are not illegal. Hence, we do not even reach a Penick question of knowledgeable waiver in this case.
Finding no error in the trial court's admission of Longstreet's blood alcohol test result, we affirm his convictions for the crime of manslaughter and sentence to three (3) consecutive nine (9) year terms to the Mississippi Department of Corrections.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, ROBERTSON, SULLIVAN, PITTMAN and BANKS, JJ., concur.
McRAE, J., dissents with separate written opinion to follow.
*22 McRAE, Justice, dissenting:
I respectfully dissent from the majority in this case which affirms the introduction of the results of a blood alcohol test based on findings of probable cause and consent given by the defendant.
When driving under the influence of alcohol results in a fatal accident, the drunk driver may be charged under our DUI statute, Miss. Code Ann. § 63-11-30(1) (Supp. 1989) or under Miss. Code Ann. § 97-3-47 (1972), for manslaughter upon a finding of culpable negligence. Under either statute, the defendant is entitled to certain constitutional protections, most notably, the requirement that probable cause must exist before a blood alcohol test can be taken.
The facts of this case underscore the menace to society posed by drunken drivers and the horrible tragedy of their actions. Despite the senselessness of these deaths, we cannot compound the injury by sidestepping the rights of the defendant.
As the majority has stated, for the fruits of a warrantless blood search to survive the scrutiny of the exclusionary rule and be admitted into evidence, the blood test, or search, must have been based on probable cause. Cole v. State, 493 So.2d 1333, 1335 (Miss. 1986). I disagree with the finding that Officer Rose had probable cause to order a blood test on Danny Longstreet.
Certain facts are undisputed. Two people were dead, hopelessly entrapped in a hideous tangle of twisted wreckage. Another, only fourteen years old, died three hours later. Danny Longstreet was driving the car that plowed into the McNeer vehicle in the early afternoon of May 20, 1989. The road was straight, dry and in good condition.
Beyond that, there are, in this case, troublesome aspects about the other facts comprising the "circumstances dictat[ing]" the removal of blood for testing. Ashley v. State, 423 So.2d 1311, 1313 (Miss. 1983). Officer Rose testified that he ordered the test because it is a standard operating procedure of the Highway Patrol whenever there is a fatal accident. Such test is ordered on the drivers of both vehicles involved. Noticeably absent from his trial testimony is any indication of whether he thought, at the time, that Longstreet was drunk. He did testify, however, that he did not smell any alcohol on Longstreet's breath either at the scene or in the hospital room.
We have held in the past that searches and blood tests administered pursuant to standard administrative procedure are admissible when supported by other evidence which establishes probable cause. Cole, 493 So.2d 1333, 1335-1336 (Miss. 1986); Drane v. State, 493 So.2d 294, 298 (Miss. 1986).
In Cole, a blood alcohol test given as part of a standard procedure after a fatal accident was found inadmissible because the administering officer lacked probable cause. 493 So.2d 1333, at 1336. As in the case sub judice, the officer in Cole gave no evidence that he thought at the time that the defendant was drunk. Further, there was no other evidence offered at the hearing indicating that the fatal accident was caused by drunken driving, to-wit: the officer testified that he did not smell alcohol on the defendant's breath; the defendant displayed no outward signs of intoxication; there were no alcoholic containers in the vehicle; and he had obtained no information from other sources linking the accident to alcohol. Cole, 493 So.2d 1333 at 1335-1336.
By way of comparison, we must examine the evidence used to establish that Longstreet's alleged intoxication was the probable cause of this accident. Officer Rose did not testify that he thought Longstreet was intoxicated. Further, he testified that he did not smell alcohol on his breath. There was evidence that Longstreet's speech was slurred and that his pupils were dilated  symptoms of a concussion, which he had suffered; not evidence of intoxication.
Officer Rose testified that he believed he might have seen a beer can in Longstreet's car. No beer cans were introduced into evidence nor did he testify that he actually saw a beer can or observed its condition, e.g., cold and wet or hot and dry.
*23 This Court stated in Ashley v. State, 423 So.2d 1311, 1314 (Miss. 1983), that information gathered at the scene of an accident and at the hospital provided probable cause for that appellant's arrest, as well as evidence that he was probably intoxicated. In the case sub judice, eye witnesses at the accident scene observed Longstreet's car move over into the wrong lane. Other eye witnesses observed the front wheels of the car were wiggling, more indicative of front end problems than of an intoxicated driver.
After the accident, Longstreet was transported by ambulance to the hospital. During trial and after the suppression hearing, Nurse Aldy testified that she smelled alcohol on Longstreet's breath and that his behavior was boisterous and obnoxious. However, she did not communicate these observations to Officer Rose prior to the administration of the blood alcohol test.
Accordingly, I submit that § 23 of our constitution is alive and well and that at the time Officer Rose administered the test, he did not have probable cause to do so.
The majority opinion stated that Longstreet consented to the administration of a blood alcohol test at the hospital after the accident. Because our statute raises the act of driving under the influence of alcohol to the status of a felony, we must afford defendants in DUI cases the same protections given defendants in other criminal actions under the fourth amendment and § 23 of the Mississippi constitution. The U.S. Supreme Court has held that consent to a search must be voluntary, given without "duress or coercion, express or implied." Schneckloth v. Bustamonte, 412 U.S. 218, 248, 93 S.Ct. 2041, 2059, 36 L.Ed.2d 854, 875 (1972).
In Penick v. State, 440 So.2d 547, 551 (Miss. 1983), this Court held that when a search is based on consent alone, it must be accompanied by a knowledgeable waiver of rights. Thus, under Mississippi law, consent to a search, including a blood alcohol test, must be given knowingly and voluntarily.
The giving of valid consent by a drunken driver, therefore, places us in a "Catch 22" situation underscored by the facts of the case sub judice. To determine whether valid consent has been given, we are required to look at "the totality of the circumstances." Cutchens v. State, 310 So.2d 273, 276 (Miss. 1975). If Longstreet's abilities were so impaired as to have caused such a terrible accident less than an hour before the blood/alcohol test was administered, can we fairly say that knowing consent was given? Also, Longstreet had suffered a concussion in the accident, further limiting his ability to give a knowing consent. He testified, in fact, that his memory of the accident and the events thereafter were rather dim, but that he thought at the time he was signing a hospital release form.
Assuming arguendo that Longstreet was cognizant at the time of what he was signing, questions of the voluntariness of his signature must be raised as well. The "consent form" he signed (attached as Appendix A) stated expressly that the administering officer certifies that "(1) the named subject has been arrested" and "(2) the test requested is reasonably likely to produce evidence relevant to the alleged criminal violation underlying the arrest." In fact, Longstreet had not yet been arrested. Under the circumstances, reading the text of the consent form, especially when one has not been advised of his right to refuse to be tested would likely instill fear, amounting at least to the level of implied duress condemned in Bustamonte. Moreover, by representing to Longstreet that he had been arrested through the language of the consent form, even though, in fact, he had not been arrested, begs the question of why he was not advised until May 20, 1989, of his Miranda and sixth amendment rights.
We are faced, therefore, with a complex wrinkle in our law of criminal procedure. In essence, the laws under which a drunken driver can be arrested on charges of vehicular homicide, whether under the culpable negligence statute or under the implied consent law, are the same laws that will ultimately render the evidence of his intoxication inadmissible at trial.
*24 The wrinkle deepens when an officer asks, "Will you consent to a blood test under the sixth amendment to the U.S. Constitution and § 23 of the Mississippi constitution?" Is this really any different than the situation where an officer asks a suspect to waive his rights and give a confession without informing him of his rights not to answer or to have an attorney present?
To take the analogy one step further, if an officer asks, "Were you drunk or intoxicated in excess of .10 alcohol at the time you killed the victim?" The suspect answers, "Yes." Can we, under our jurisprudence, allow that admission to go in evidence when no Miranda rights were given?
I respectfully dissent because the State failed to meet its burden of proving probable cause or a valid waiver by the defendant of a knowing consent. There is nothing to prevent the State from using all other evidence to obtain a conviction.
NOTES
[1] Miss. Code Ann. § 97-3-47 (1972) (culpable negligence, manslaughter).
[2] is unlawful for any person to drive or otherwise operate a vehicle within this state who (a) is under the influence of intoxicating liquor; (b) is under the influence of any other substance which has impaired such person's ability to operate a motor vehicle; or (c) has ten one-hundredths percent (.10%) or more by weight volume of alcohol in the person's blood based upon milligrams of alcohol per one hundred (100) cubic centimeters of blood as shown by a chemical analysis of such person's breath, blood or urine administered as authorized by this chapter.
Miss. Code Ann. § 63-11-30(1) (Supp. 1991).
[3] For example, one witness testified that when Longstreet passed them on the highway, she noticed that the front wheels of his Pontiac were shaking pretty bad. However, the same witness also observed that when Longstreet passed, "he had his hand laying on the back, you know, on the seat, and he raised his hand up and was just waving and laughing."

Other witnesses noticed that Longstreet would gradually veer over the yellow lines and drive in the wrong lane of travel for as much as one quarter (1/4) of a mile before crossing back into the right lane. His speed was also erratic as he would constantly accelerate and then slow down.
[4] Section 23. The people shall be secure in their persons, houses, and possessions, from unreasonable seizure or search; and no warrant shall be issued without probable cause, supported by oath or affirmation, specially designating the place to be searched and the person or thing to be seized.

Miss. Const. art. III, § 23.