# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2008-CA-00027-SCT

*TRINITY MISSION HEALTH & REHAB OF*
*HOLLY SPRINGS, LLC*

*v.*

*RUTH LAWRENCE, AS ADMINISTRATRIX OF*
*THE ESTATE OF JAMES E. LAWRENCE,*
*DECEASED AND ON BEHALF OF THE*
*WRONGFUL DEATH BENEFICIARIES OF*
*JAMES E. LAWRENCE, DECEASED*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/18/2007 |
| TRIAL JUDGE: | HON. HENRY L. LACKEY |
| COURT FROM WHICH APPEALED: | MARSHALL COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JOHN L. MAXEY, II |
| | HEATHER MARIE ABY |
| ATTORNEY FOR APPELLEE: | JOHN GORDON SIMS, III |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED AND REMANDED - 02/12/2009 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**GRAVES, PRESIDING JUSTICE, FOR THE COURT:**

¶1.    The underlying dispute in this case concerns the care and treatment of a patient at Trinity Mission Health & Rehab of Holly Springs, LLC ("Trinity Mission").  The plaintiff sued Trinity Mission in Marshall County Circuit Court, alleging negligence, medical malpractice, gross negligence, fraud, breach of fiduciary duty, and a statutory survival claim. The defendant moved to compel arbitration pursuant to an arbitration agreement allegedly

signed by the patient upon admission to Trinity Mission. The circuit court denied the motion to compel arbitration. Aggrieved by the circuit court's decision, Trinity Mission appeals to this Court.

**FACTS**

¶2. On January 3, 2005, James Lawrence was admitted to Trinity Mission. He died on July 22, 2005, while still a resident at Trinity Mission. On December 27, 2006, the widow of James Lawrence, Ruth Lawrence, as the administratrix of James Lawrence's estate and on behalf of his wrongful death beneficiaries, filed a complaint against Trinity Mission alleging negligence, medical malpractice, gross negligence, fraud, breach of fiduciary duty, and a statutory survival claim. In response, Trinity Mission filed a motion to compel arbitration, attaching as exhibits the admission agreement allegedly signed by James Lawrence and the alternative dispute resolution agreement (the "arbitration agreement"[1]) allegedly signed by him. Trinity Mission argued that because James Lawrence had entered into an arbitration agreement with Trinity Mission, Mississippi law mandates that the agreement be upheld and that his dispute be submitted to arbitration. Ruth Lawrence responded to the motion to compel arbitration and argued that her husband never signed the admission and arbitration agreements and that her signatures on the agreements were not legally sufficient to bind her husband. In addition, she argued that even if there was a valid arbitration agreement, it was procedurally unconscionable, violated public policy, and

---

[1] We refer to the alternative dispute resolution agreement as the arbitration agreement because that is how the parties have commonly referred to it and because Trinity Mission seeks to compel arbitration of the dispute.

constituted illegal consideration for admission to Trinity Mission. Trinity Mission responded by arguing that the arbitration agreement was valid, not unconscionable, and not a form of illegal consideration.

¶3. The trial court heard arguments on the motion to compel on December 6, 2007. Following the hearing, the trial court issued an order overruling the motion, finding that there was no testimony demonstrating that James Lawrence made the markings that appeared on the admission and arbitration agreements as his "signature," or that he understood the contents of the agreements. Trinity Mission subsequently appealed to this Court.

**ANALYSIS**

¶4. "The grant or denial of a motion to compel arbitration is reviewed de novo." *Grenada Living Ctr., LLC v. Coleman*, 961 So. 2d 33, 36 (Miss. 2007) (quoting *East Ford, Inc. v. Taylor*, 826 So. 2d 709, 713 (Miss. 2002)); *Pre-Paid Legal Servs., Inc. v. Battle*, 873 So. 2d 79, 82 (Miss. 2004) (citations omitted). "'A circuit court judge sitting without a jury is accorded the same deference with regard to his findings as a chancellor,' and his findings are safe on appeal where they are supported by substantial, credible, and reasonable evidence." *Par Indus., Inc. v. Target Container Co.*, 708 So. 2d 44, 47 (Miss. 1998); *see also Chantey Music Publ'g, Inc. v. Malaco, Inc.*, 915 So. 2d 1052, 1055 (Miss. 2005) (stating in a contract case that "where the judge has sat as the fact-finder, we afford deference to the findings of the trial judge"). "[W]e will not disturb the trial judge's findings of fact 'unless they are manifestly wrong, clearly erroneous or an erroneous legal standard was applied.'" *Upchurch Plumbing, Inc. v. Greenwood Utils. Comm'n*, 964 So. 2d 1100, 1107 (Miss. 2007).

3

¶5.     This Court has previously held that agreements between patients and nursing homes affect interstate commerce and, therefore, fall under the purview of the Federal Arbitration Act. *Grenada Living Ctr.*, 961 So. 2d at 36 (citation omitted). This Court conducts a two-step inquiry to determine whether an arbitration agreement should be enforced. *See, e.g.*, *Grenada Living Ctr.*, 961 So. 2d at 36. First, this Court determines whether the parties intended to arbitrate the dispute. *Id.* To conclude that there was an agreement to arbitrate, there must be a valid contract. *Grenada Living Ctr.*, 961 So. 2d at 36-37. "A valid contract must have (1) two or more contracting parties, (2) consideration, (3) an agreement that is sufficiently definite, (4) parties with legal capacity to make a contract, (5) mutual assent, and (6) no legal prohibition precluding contract formation." *Id.* at 37 (citing *Rotenberry v. Hooker*, 864 So. 2d 266, 270 (Miss. 2003)). The dispute must also fall within the scope of the arbitration agreement. *East Ford, Inc.*, 826 So. 2d at 713. The Supreme Court and this Court have held that "[a]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Pre-Paid Legal Servs., Inc.*, 873 So. 2d at 83 (citations omitted); *see also AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648, 106 S. Ct. 1415, 1418, 89 L. Ed. 2d 648, 655 (1986)).

¶6.     Second, this Court determines "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Grenada Living Ctr.*, 961 So. 2d at 36 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 628, 105 S. Ct. 3346, 3355, 87 L. Ed. 2d 444, 456 (1985)). The Supreme Court has further clarified that "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2 [of the Federal

4

Arbitration Act]." ***Doctor's Assocs. v. Casarotto***, 517 U.S. 681, 687, 116 S. Ct. 1652, 1656, 134 L. Ed. 2d 902, 909 (1996); ***Mitsubishi Motors Corp.***, 473 U.S. at 713.

¶7. In this case, Trinity Mission asserts on appeal that James and Ruth Lawrence entered into a valid arbitration agreement with Trinity Mission. Trinity Mission argues that this arbitration agreement is not procedurally or substantively unconscionable and does not violate public policy. Trinity Mission maintains that the arbitration agreement should be enforced and asks that this Court reverse the trial court's denial of its motion to compel arbitration.

¶8. Ruth Lawrence, however, contests the fact that James Lawrence entered into the arbitration agreement at all. She claims that the markings in the vicinity of the resident's signature line on both the admission agreement and the arbitration agreement are not her husband's signature. She argues that he cannot be bound by an agreement when there is no evidence that he ever assented to the agreement. Ruth Lawrence also claims that her signature on the arbitration agreement cannot bind her husband because she had no legal authority to legally bind him – either pursuant to a power of attorney or as his healthcare surrogate. She further argues that, should this Court find that there is a valid arbitration agreement, it should not be enforced because it is procedurally unconscionable and void for public policy reasons.

¶9. This Court is persuaded by Ruth Lawrence's assertion that there is no valid arbitration agreement. The markings in the vicinity of the resident's signature line on the admission agreement resemble a slanted "X" with an additional stray mark on the side. The markings

5

in the vicinity of the resident's signature line on the arbitration agreement appear to be a collection of stray marks that do not resemble any letter or recognizable symbol.

¶10.    At the hearing on the motion to compel arbitration, Trinity Mission represented that "both [Mr. Lawrence] and Ms. Ruth Lawrence executed an Admission Agreement and an Alternative Dispute Resolution Agreement." Trinity Mission also referenced "the last page of the agreement above Mr. Lawrence's and his wife, the Plaintiff's signatures." Portions of the arbitration agreement[2] were read into the record. Trinity Mission argued that "clearly a written Agreement to Arbitrate was entered into by Mr. and Mrs. Lawrence and Trinity Mission on January 3rd, 2005." Trinity Mission did not describe the circumstances under which James Lawrence allegedly signed the agreements with the two different sets of stray marks.

¶11.    Ruth Lawrence represented at the trial court hearing that she did not observe her husband making any of the markings that appear in the vicinity of the resident signature lines on either the admission or arbitration agreements. She also argued that, although James Lawrence could sign his own name, he was illiterate and would have been unable to understand the agreements that he allegedly signed. Ruth Lawrence also claimed that no one had read the documents to her husband. In addition, she argued that she had no legal authority to bind him to the arbitration agreement. She then concluded that James Lawrence never entered into an agreement to arbitrate and that the agreement should not be upheld.

---

[2] The arbitration agreement was not entered as an exhibit, but it had previously been submitted to the trial court as Exhibit C to the motion to compel arbitration.

¶12. After the conclusion of the arguments, the trial court took the matter under advisement, reviewed the motion and the briefs from both sides, and denied the motion to compel arbitration. The trial court stated:

> The Motion of Defendant is based upon an alleged agreement styled, "Alternative Dispute Resolution Agreement", purported to have been executed by Plaintiff, Ruth Lawrence, on behalf of James E. Lawrence, dated the 3rd day of January, 2005. James E. Lawrence is now deceased, and Ruth Lawrence is his widow.
> Mr. Lawrence is purported to have signed the instrument with an "X"[3][,] however there was no testimony that this was his "signature"; that he understood what he was signing; whether he could read or write; or [whether he was] competent, and the circumstances under which the document was "executed".
> Apparently Ruth Lawrence executed the document, however[,] there was no testimony of the circumstances under which it was executed, whether she understood the results of executing the document; whether she could read and/or write, or was competent.

The trial court made a finding of fact that the markings on the agreements were not James Lawrence's signature. And because the trial court also concluded that Ruth Lawrence's signature could not bind her husband to the arbitration agreement, the trial court found that no valid arbitration agreement existed between James Lawrence and Trinity Mission.

***James Lawrence's Purported Signature***

¶13. In its appellate brief, Trinity Mission references the Lawrences' signatures, but, again, does not describe the circumstances under which James Lawrence allegedly signed the agreements with stray marks, beyond stating that the signatures were witnessed by an unnamed Trinity Mission employee. In Ruth Lawrence's appellate brief, she maintains that

---

[3] Although the markings that resemble an "X" are on the admission agreement, from the context of the trial court's order, it appears that he meant to refer to the markings on the arbitration agreement.

the markings were not made by her husband and adds that when he was admitted to Trinity Mission, he was mentally competent and alert. She also claims that he knew how to sign his own name.

¶14. As stated above, this Court affords deference to a trial court's findings of fact when it is sitting without a jury, and will reverse a finding only if it is not supported by substantial, credible evidence, or if it is manifestly wrong. *See, e.g.*, ***Upchurch Plumbing, Inc.***, 964 So. 2d at 1107. In this case, the trial court was not persuaded that the markings in the vicinity of the resident's signature line of the arbitration agreement constituted James Lawrence's signature. Having reviewed the markings on both the admission agreement and arbitration agreement, we are persuaded that the trial court's finding is supported by substantial, credible evidence. The markings on both documents are completely different, and neither resembles "James Lawrence" or any type of mark that might serve as a person's signature. In fact, the markings resemble nothing more than stray marks in the vicinity of the resident's signature line. Trinity Mission has not presented any evidence that the markings were indeed made by James Lawrence. Ruth Lawrence has always maintained that the markings were not made by her husband, who knew how to sign his name and was mentally competent when admitted to Trinity Mission. This Court has held that "[a]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." ***Pre-Paid Legal Servs., Inc.***, 873 So. 2d at 83 (citations omitted). The Northern District of Mississippi has also stated that "the burden of proving whether the arbitration agreement actually exists rests on the party seeking to invoke the agreement." ***Mariner Healthcare, Inc. v. Green***, 2006 U.S. Dist. LEXIS 37479, at *4 (N.D. Miss. Jun. 7, 2006) (citation

8

omitted). Trinity Mission has not proven that the markings on the arbitration agreement were James Lawrence's signature. Therefore, we do not disturb the trial court's finding. Even if this Court reviewed this finding of fact de novo, we would still be of the opinion that the markings have not been shown to be James Lawrence's signature. Thus, under either standard of review, we conclude that there is no valid arbitration agreement between James Lawrence and Trinity Mission based on the markings on the resident's signature lines of the arbitration agreement.

### Ruth Lawrence's Signature

¶15.    It is undisputed that Ruth Lawrence signed both the admission agreement and the arbitration agreement. Trinity Mission briefly argued during the trial court hearing that Ruth Lawrence's signature could bind James Lawrence to the arbitration agreement because she was his responsible party, but does not reassert this argument on appeal. Because Trinity Mission does not renew this argument on appeal, this Court need not address this issue. *Hood ex rel. State Tobacco Litigation v. State*, 958 So. 2d 790, 815 n.17 (Miss. 2007); *Collins v. Tallahatchie County*, 876 So. 2d 284, 286 n.5 (Miss. 2004).

### Whether There Is a Valid Arbitration Agreement Between James Lawrence and Trinity Mission.

¶16.    Because this Court finds that the markings in the vicinity of the resident's signature line of the arbitration agreement are not James Lawrence's signature, we also hold that there is no evidence that James Lawrence intended to enter into the agreement. Contract law requires mutual assent in order to have a valid contract. *Grenada Living Ctr.*, 961 So. 2d at 37 (citing *Rotenberry*, 864 So. 2d at 270). Therefore, we conclude that, as a matter of law,

9

no valid arbitration agreement existed between James Lawrence and Trinity Mission. Because this Court finds that there was no valid arbitration agreement, the arguments concerning "legal constraints external to the parties' agreement [that] foreclose[] arbitration" need not be addressed. *Grenada Living Ctr.*, 961 So. 2d at 36 (quoting *Mitsubishi Motors Corp.*, 473 U.S. at 628). Accordingly, this Court concludes that the trial court properly denied Trinity Mission's motion to compel arbitration.

## CONCLUSION

¶17. Because we find that there was no valid agreement to arbitrate between James Lawrence and Trinity Mission, the trial court's order overruling Trinity Mission's motion to compel arbitration is affirmed and this case is remanded for proceedings on the merits.

¶18. **AFFIRMED AND REMANDED.**

**WALLER, C.J., CARLSON, P.J., LAMAR, KITCHENS, CHANDLER AND PIERCE, JJ., CONCUR. DICKINSON AND RANDOLPH, JJ., CONCUR IN RESULT ONLY.**