# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2009-KA-00752-SCT

*LARRY SETZER*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/07/2009 |
| TRIAL JUDGE: | HON. ROBERT P. CHAMBERLIN |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | T. SWAYZE ALFORD |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: JOHN R. HENRY, JR. |
| DISTRICT ATTORNEY: | JOHN W. CHAMPION |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 02/17/2011 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE CARLSON, P.J., RANDOLPH AND KITCHENS, JJ.**

**KITCHENS, JUSTICE, FOR THE COURT:**

¶1. Larry Setzer appeals his convictions of two counts of manslaughter by culpable negligence in violation of Mississippi Code Section 97-3-47, and one count of driving under the influence (DUI), resulting in permanent injury, in violation of Mississippi Code Section 63-11-30(5). Finding that the trial judge did not err by denying Setzer's motion to suppress the results of his blood test, we affirm.

**Facts and Procedural History**

¶2. On the evening of April 17, 2007, Larry Setzer was driving east in a Ford F-250 pickup truck on Goodman Road in Southaven, Mississippi. As Setzer approached the traffic light at the intersection of Goodman Road and Airways Boulevard, his vehicle collided with a stationary Buick Park Avenue passenger car in the north turn lane of east Goodman Road. The pickup pushed the car into the intersection, causing a four-vehicle collision on the west-bound side of Goodman Road. Before coming to its final resting place, the Buick struck a Dodge Intrepid automobile in the south turn lane of west Goodman Road, which caused the Dodge to collide with an 18-wheeler (an over-the-road tractor with trailer in tow) in the inside lane of west Goodman Road. The Ford pickup truck overturned onto its passenger side and slid into the 18-wheeler before coming to a complete stop.

¶3. Setzer was the only occupant of the Ford pickup truck. As a result of the accident, he suffered two broken teeth, a head injury, a neck sprain, lacerations to his right elbow, and abrasions to his abdomen, back, chest, and neck. The Buick was occupied by its driver, Glyness Lannom, and passengers Phillip Bieselin, Jacob Lannom, and Zachary Lannom. Bieselin was left partially paralyzed, and Jacob and Zachary Lannom perished as a result of injuries they suffered in the collision. Glyness Lannom suffered serious injuries as a result of the collision. The driver of the Dodge suffered minor injuries that were treated at the scene of the accident. The driver of the 18-wheeler suffered no injuries.

¶4. Southaven Police Officer Jordan Jones was in charge of investigating the accident. After interviewing witnesses and viewing the physical evidence at the scene, Officer Jones found Setzer as he was being treated in a Southaven Fire Department ambulance. Officer

2

Jones testified that the ambulance was still at the scene of the accident, that he was in uniform when he approached Setzer, that he advised Setzer of his *Miranda* rights in accordance with *Miranda v. Arizona*, 384 U.S. 436, 467-68, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), that he asked Setzer for his account of the accident, and that Setzer did not appear to be injured. Officer Jones said that Setzer appeared angry, aggressive, and uncooperative with the medical personnel who were attempting to treat him in the ambulance. Additionally, Officer Jones testified that Setzer had bloodshot eyes and slurred speech, which Officer Jones deemed to be indicators of intoxication. Officer Jones then administered a portable breath test to Setzer, which resulted in a reading of 000, ruling out the presence of alcohol. Setzer attributed his bloodshot eyes and slurred speech to his injuries.

¶5.    Setzer was transported from the accident scene to Baptist Memorial Hospital-DeSoto, a distance of approximately one mile. Officer Jones followed the ambulance to the hospital, located Setzer in a private room of the emergency department, reintroduced himself to Setzer, and advised Setzer of his *Miranda* rights for a second time. Officer Jones testified that Setzer verbally acknowledged that he understood his *Miranda* rights. Setzer testified at the trial; however, Setzer gave no testimony with regard to whether he recalled Officer Jones's advising him of his *Miranda* rights or whether Setzer had acknowledged and waived those rights.

¶6.    While at the hospital, a nurse drew a blood sample from Setzer for investigative purposes. At the time of the blood collection, Setzer was not under arrest. Additionally, the record is clear that Setzer never gave written consent for blood to be drawn for crime

3

laboratory analysis. However, Officer Jones was adamant that Setzer twice gave Officer Jones verbal consent for the blood draw. Teresa Windham, the nurse who extracted the blood from Setzer, testified that she did not recall whether Setzer had given his consent for the blood draw, but added that she would not have drawn Setzer's blood at the request of the Officer Jones without consent from Setzer.

¶7. Officer Jones took the blood sample to Officer Jeff Logan, who still was at the accident scene. The blood sample was sent to NMS Labs to be tested. The report generated by NMS Labs said that Setzer's blood had tested positive for alprazolam[1] in the amount of 73 ng/mL. The NMS Labs report also said that the therapeutic range for alprazolam is 10-50 ng/mL.

¶8. On November 17, 2007, Setzer was indicted for two counts of DUI resulting in death and one count of DUI resulting in permanent injury, in violation of Mississippi Code Section 63-11-30(5) (Rev. 2004).

¶9. On October 21, 2008, Setzer filed a motion to suppress all testimony and evidence regarding the sample of blood drawn from him, alleging that he had not consented to the blood draw, that he had not been under arrest at the time of the blood draw, that the State had not secured a search warrant for the blood draw, and that no probable cause and no exigent circumstances had negated the search-warrant requirement.

---

[1] Alprazolam is also known by the brand names Niravam and Xanax. U.S. National Library of Medicine, http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000807 (last visited Feb. 15, 2011).

¶10.  On February 12, 2009, the State offered to reduce the charges against Setzer. On February 13, 2009, the State proceeded against Setzer upon a bill of information, charging Setzer with two counts of culpable negligence manslaughter under Mississippi Code Section 97-3-47, and one count of DUI assault under Mississippi Code Section 63-11-30(5). On that date, Setzer filed his "waiver of right to grand jury procedure and petition to proceed on information."[2]

¶11.  Following a pretrial hearing, the trial judge denied Setzer's motion to suppress. The court held that, based on the evidence before it, Officer Jones "had probable cause to believe that Setzer had committed the crime of DUI causing death and/or injury and that exigent circumstances existed which authorized his attempt to obtain a blood sample without a warrant." Additionally, the trial court held that, based on the testimony of Officer Jones and Nurse Windham, "Setzer knowingly and voluntarily consented to the drawing of the blood sample."

¶12.  The State and Setzer also entered into a stipulation of facts. In that stipulation, Setzer agreed to waive the exercise of his right to a trial by jury and his right to confront witnesses against him; however, Setzer reserved his right to appeal the trial court's denial of his motion to suppress evidence of the blood draw. The stipulation summarized the evidence that the State would offer at trial, and agreed that the evidence would be sufficient to meet the State's burden of proof.[3] In addition to the testimony of the eyewitnesses to the accident and Officer

_____

[2] The charges in the indictment were committed to the inactive files on February 17, 2009.

[3] The stipulation provided that the State would offer testimony from eyewitnesses to the accident as well as testimony from Nurse Windham, a toxicologist from NMS Labs, and

5

Jones, the stipulation of facts provided that the State would offer the testimony of Robert Camp, a limousine driver, who had observed Setzer driving in an erratic manner prior to the wreck. However, Setzer did not stipulate that the blood drawn and later tested was obtained with his consent or taken based on probable cause.

¶13. At the conclusion of a bench trial[4] on February 13, 2009, the trial judge found Setzer guilty of two counts of manslaughter by culpable negligence and guilty of one count of DUI causing death or permanent bodily injury. Setzer was sentenced to serve fifteen years in the custody of the Mississippi Department of Corrections on count one; fifteen years, suspended, on count two, to run concurrently with the sentence for count one; and ten years' post-release supervision on count three. Additionally, Setzer was ordered to pay a $1,000 fine, $100 to the Crime Victims' Compensation fund, court costs, and $17,512.20 to the Office of the Attorney General. Aggrieved, Setzer appealed.

## Issue

¶14. Setzer asks this Court to determine whether the trial court erred in denying his pretrial motion to suppress evidence of the blood test. Setzer maintains that he did not consent to the collection of a blood sample, that the State lacked probable cause to collect the blood sample, and no exigent circumstances were present which would have negated the requirement for a search warrant.

## Standard of Review

---

Officer Jones.

[4]Setzer waived his right to trial by jury.

¶15.   "A circuit court judge sitting without a jury is accorded the same deference with regard to his findings as a chancellor, and his findings are safe on appeal where they are supported by substantial, credible, and reasonable evidence." *Trinity Mission Health & Rehab of Holly Springs, LLC v. Lawrence*, 19 So. 3d 647, 649 (Miss. 2009) (quoting *Par Indus., Inc. v. Target Container Co.*, 708 So. 2d 44, 47 (Miss. 1998)). "[W]e will not overturn findings of fact where they are supported by substantial evidence in the record unless there was abuse of discretion by the trial judge or the findings were manifestly wrong or clearly erroneous." *Morley v. Jackson Redevelopment Auth.*, 874 So. 2d 973, 975 (Miss. 2004). Moreover, "[t]his Court can reverse a trial court's denial of a motion to suppress only: if the incorrect legal principle was applied; if there was no substantial evidence to support a voluntary, knowing, and intelligent waiver of *Miranda* rights; and if the denial was a result of manifest error." *Scott v. State*, 8 So. 3d 855, 861 (Miss. 2008).

## Discussion

¶16.   "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. "The people shall be secure in their persons, houses, and possessions, from unreasonable seizure or search." Miss. Const. art. 3 § 23. "A search made without warrant and not incident to a lawful arrest is not illegal *per se*, but if the fruits of the search are to withstand the exclusionary rule, the search must have been predicated on probable cause." *McDuff v. State*, 763 So. 2d 850, 854 (Miss. 2000) (quoting *Hailes v. State*, 268 So. 2d 345, 346 (Miss. 1972)). Moreover, "[t]he degree of intrusion necessary in the taking of a blood sample is sufficient to require the presence of probable cause. The Fourth Amendment prohibition

against unreasonable search and seizure applies when an intrusion into the body – such as a blood test – is undertaken without a warrant, absent an emergency situation." *Cole v. State*, 493 So. 2d 1333, 1336 (Miss. 1986) (quoting *Schmerber v. Cal.*, 384 U.S. 757, 770-71, 86 S. Ct. 1826, 1835-36, 16 L. Ed. 2d 908, 919-20 (1966)). However, this Court has upheld the collection of a blood sample, absent the suspect's arrest or consent, where probable cause existed for the search. *Gibson v. State*, 503 So. 2d 230, 233 (Miss. 1987).

¶17.    Setzer contends that, based on the totality of the circumstances, it is clear that he did not consent to the collection of his blood for the purpose its being used in the State's prosecution of him. Setzer made a similar argument in support of his motion to suppress. In that motion, Setzer averred that "[a]t the time the State seized Defendant's blood, Defendant was not under arrest, he did not consent to his blood being taken, no warrant had been secured by the State, and the State's discovery provides no evidence of probable cause that Defendant was under the influence or that an exigent circumstance existed that negated the requirement for a warrant." The trial court denied Setzer's motion to suppress, and in its written order found that:

> a. Officer Jones properly responded to an automobile accident involving four (4) cars within his jurisdiction;
> b. The officer determined that a serious accident had occurred and, upon viewing the scene closer, noted two (2) children who, based upon his experience, appeared to be deceased. He also noted another passenger who appeared to be seriously injured;
> . . .
> d. From his investigation, Officer Jones determined that the defendant's vehicle had rear-ended the victim's vehicle and pushed it through the intersection;
> . . .

8

f.  Officer Jones observed at this time that the defendant appeared angry, aggressive and uncooperative. Officer Jones stated that he observed bloodshot eyes and slurred speech which he deemed to be indicators of intoxication;

g.  Officer Jones offered the defendant a portable breath test which the defendant took and passed, ruling out the presence of alcohol;

h.  Testimony was presented as to the difficulty in time of obtaining a warrant and the fact that blood intoxication evidence would dissipate over time;

i.  Officer Jones went to defendant Setzer's room in the Emergency Room at Baptist-Desoto hospital to request consent to draw Setzer's blood. Officer Jones once again read Mr. Setzer his Miranda rights and Setzer said he understood these rights. Defendant Setzer did consent to the drawing of his blood.

j.  Officer Jones obtained the services of E.R. nurse, Teresa Windham, to draw the blood. Officer Jones stated he received consent again from Mr. Setzer in the presence of nurse Windham. Nurse Windham testified that she did not remember the officer asking for consent in her presence but did state that she would not have drawn the blood if the defendant had refused.

¶18.  The trial court, relying on the rationale of ***Longstreet v. State***, 592 So. 2d 16 (Miss. 1991), held that, based on these facts, Officer Jones "had probable cause to believe that Setzer had committed the crime of DUI causing death and/or injury and that exigent circumstances existed which authorized his attempt to obtain a blood sample without a warrant." Additionally, the trial court found that Setzer "knowingly and voluntarily consented to the drawing of the blood sample."

¶19.  Regarding Setzer's allegation that he had not consented to the blood draw, the trial judge was challenged with determining the credibility and veracity of the witnesses before him. *See* ***Mohr v. State***, 584 So. 2d 426, 431 (Miss. 1991). Officer Jones testified that Setzer twice gave him verbal consent for the blood draw. Windham, the nurse who extracted the blood from Setzer, testified that she did not recall whether Setzer gave consent for the blood draw, but added that she would not have drawn Setzer's blood at the request of Officer Jones without consent from Setzer. Although Setzer argues that he never signed a consent form,

9

this Court has never held that written consent is required for a blood draw. Therefore, based on the testimony before the trial court, we cannot say that the trial judge erred in finding that Setzer had consented to the drawing of a sample of his blood.

¶20. Further, in *Longstreet*, 592 So. 2d at 18, this Court held that "blood searches which are based upon probable cause are not illegal." In this case, Setzer's vehicle collided with a stationary vehicle as he approached a traffic signal. Officer Jones had considerable reason to believe that Setzer was intoxicated. Specifically, Officer Jones observed Setzer's being uncooperative with medical technicians who were attempting to treat him at the scene of the accident, and he testified that Setzer had slurred speech and bloodshot eyes. Consistent with the decision in *Longstreet*, the trial court did not err in holding that Officer Jones had probable cause to believe that Setzer had committed the crime of DUI causing death or injury. *See also Wilkerson v. State*, 731 So. 2d 1173, 1176 (Miss. 1999) ("Where the state is justified in requiring a blood test to determine the alcoholic content in a suspect's blood, and the test has been performed, the state is entitled to the benefit of the test results." (citing *Longstreet*, 592 So. 2d at 21)); *Green v. State*, 710 So. 2d 862, 865 (Miss. 1998) ("[A]s long as there is probable cause to believe that the person is impaired by some substance . . . the results of the blood alcohol concentration tests are admissible."); *Whitley v. State*, 511 So. 2d 929, 931 (Miss. 1986) (blood-alcohol test was admissible where officer had probable cause to arrest Whitley and charge him with manslaughter); *Cole v. State*, 493 So. 2d 1333, 1335 (Miss. 1986) ("A search made without warrant and not incident to a lawful arrest is not illegal per se, but if the fruits of the search are to withstand the exclusionary rule, the search must have been predicated on probable cause."); *Ashley v. State*, 423 So. 2d 1311, 1313

10

(Miss. 1982) ("At that time there existed probable cause for arrest and also probable cause to search appellant by requiring him to submit to the withdrawal of blood from his body to be tested.").

**Conclusion**

¶21.    The trial court did not abuse its discretion in finding that Officer Jones's actions were supported by probable cause and in finding that Setzer had consented to the search, as those findings are supported by substantial, credible, and reasonable evidence. *Trinity Missions*, 19 So. 3d at 649.  Moreover, the trial court did not apply an incorrect legal standard to this case.  *Scott*, 8 So. 3d at 861.  Thus, the convictions and sentences are affirmed.

¶22.   **COUNT I: CONVICTION OF CULPABLE NEGLIGENCE MANSLAUGHTER AND SENTENCE OF FIFTEEN (15) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.  COUNT II: CONVICTION OF CULPABLE NEGLIGENCE MANSLAUGHTER AND SENTENCE OF FIFTEEN (15) YEARS SUSPENDED, AFFIRMED.  COUNT III: CONVICTION OF DUI CAUSING PERMANENT BODILY INJURY AND SENTENCE OF TEN (10) YEARS TO BE SERVED AS POST RELEASE SUPERVISION, WITH CONDITIONS, AFFIRMED.  SENTENCES IN COUNTS I AND II SHALL RUN CONCURRENTLY.**

**WALLER, C.J., CARLSON AND GRAVES, P.JJ., DICKINSON, RANDOLPH, LAMAR, CHANDLER AND PIERCE JJ., CONCUR.**